James A. Dumas (SBN 76284)
Christian T. Kim (SBN 231017)
DUMAS & KIM, APC
3435 Wilshire Boulevard
Suite 990
Los Angeles, California 90010
Phone:   213-368-5000
Fax:      213-368-5009

Attorneys for Plaintiff and Chapter 7 Trustee
Sam S. Leslie

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>JEFFERSON HOWARD HITCHCOCK,<br><br>Debtor. | Case No. 2:15-bk-16468-RK<br><br>[Chapter 7]<br><br>[Honorable Robert N. Kwan] |
| SAM S. LESLIE, as Chapter 7 Trustee of the Estate of Jefferson Howard Hitchcock,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT NOVINGER, an individual, C1R DISTRIBUTIONS, LLC, a California limited liability company, C1R, INC., a California corporation, RASCAL VIDEO, LLC, a California limited liability company,<br><br>Defendants. | Adv. No.: 2:17-ap-01246-RK<br><br>**PROOF OF SERVICE OF (1) COMPLAINT FOR: BREACH OF FIDUCIARY DUTY; AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; BREACH OF WRITTEN AGREEMENT; CONVERSION; AND TURNOVER AND ACCOUNTING; (2) ADVERSARY PROCEEDING SHEET; (3) SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING; (4) FREE LEGAL FORMS; (5) ORDER SETTING INITIAL STATUS CONFERENCE IN ADVERSARY PROCEEDING** |

PROOF OF SERVICE OF (1) COMPLAINT FOR: BREACH OF FIDUCIARY DUTY; AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; BREACH OF WRITTEN AGREEMENT; CONVERSION; AND TURNOVER AND ACCOUNTING; (2) ADVERSARY PROCEEDING SHEET; (3) SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING; (4) FREE LEGAL FORMS; (5) ORDER SETTING INITIAL STATUS CONFERENCE IN ADVERSARY PROCEEDING

1

2

3

4

5

6

James A. Dumas (SBN 76284)
Christian T. Kim (SBN 231017)
DUMAS & KIM, APC
3435 Wilshire Boulevard
Suite 990
Los Angeles, California 90010
Phone:   213-368-5000
Fax:      213-368-5009

Attorneys for Plaintiff and Chapter 7 Trustee
Sam S. Leslie

7

8

9

10

11

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:15-bk-16468-RK |
| JEFFERSON HOWARD HITCHCOCK, | [Chapter 7] |
| Debtor. | [Honorable Robert N. Kwan] |
| SAM S. LESLIE, as Chapter 7 Trustee of the Estate of Jefferson Howard Hitchcock, | Adv. No.: **COMPLAINT FOR:** |
| Plaintiff, | **(1) BREACH OF FIDUCIARY DUTY;** **(2) AIDING AND ABETTING BREACH** |
| vs. | **OF FIDUCIARY DUTY;** **(3) BREACH OF WRITTEN** |
| ROBERT NOVINGER, an individual, C1R DISTRIBUTIONS, LLC, a California limited liability company, C1R, INC., a California corporation, RASCAL VIDEO, LLC, a California limited liability company, | **AGREEMENT;** **(4) CONVERSION; AND** **(5) TURNOVER AND ACCOUNTING** |
| Defendants. | |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Sam S. Leslie, in his capacity as the duly appointed Chapter 7 Trustee ("Plaintiff"

or the "Trustee") in the above-captioned Chapter 7 case of Jefferson Howard Hitchcock

("Debtor"), hereby complains against the defendants named herein (collectively, "Defendants")

and alleges as follows:

**THE PARTIES AND JURISDICTION**

1.      This is an adversary proceeding brought pursuant to Federal Rule of Bankruptcy Procedure 7001, *et seq.*, and 11 U.S.C. (the "Bankruptcy Code") §§ 105 and 542. The United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court") has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), 157(b)(2)(E), 157(b)(2)(O) and 1334. In the event this proceeding is determined to include non-core claims for relief, the Plaintiff consents to the entry of a final order or judgment by the Bankruptcy Court as to any such claims. Venue in the Bankruptcy Court is proper pursuant to 28 U.S.C. § 1409 in that this adversary proceeding is related to the bankruptcy case of Jefferson Howard Hitchcock bearing case number 2:15-bk-16468-RK, presently pending under Chapter 7 of Title 11 of the United States Code in the Bankruptcy Court.

2.      The Plaintiff, Sam S. Leslie is the duly appointed and acting Chapter 7 bankruptcy trustee for the estate of the Debtor.

3.      The defendant, Robert Novinger, ("Novinger") is and at all times alleged herein, an individual residing in the County of Los Angeles in the State of California and subject to the jurisdiction of this Court.

4.      The defendant, C1R Distributions, LLC ("C1R Distributions") is and at all times alleged herein, a California limited liability company located in the County of Los Angeles in the State of California and subject to the jurisdiction of this Court.

5.      The defendant, C1R, Inc. ("C1R, Inc.") is and at all times alleged herein, a California corporation located in the County of Los Angeles in the State of California and subject to the jurisdiction of this Court. Plaintiff is informed and believes and thereon alleges that C1R, Inc. is the managing member of C1R Distributions and co-defendant, Rascal Video, LLC. Plaintiff is further informed and believes and thereon alleges that defendant Novinger, is the sole or majority owner of C1R, Inc.

6.      The defendant, Rascal Video, LLC, ("Rascal") is and at all times alleged herein, a California limited liability company located in the County of Los Angeles in the State of California and subject to the jurisdiction of this Court. Plaintiff is informed and believes that Rascal is controlled by defendant, Novinger.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

7.      Plaintiff refers to the allegations set forth in paragraph 1 through 6 hereof and incorporates said allegations herein as if fully set forth hereat.

8.      Plaintiff is informed and believes and thereon alleges that C1R Distributions was formed on or about January 9, 2002, to operate as a gay pornography company in the business of wholesale distribution of gay pornography videos and other media.  (A true and correct copy of C1R Distributions' Articles of Organization is attached hereto as **Exhibit "A"** and incorporated herein by this reference.)

9.      Plaintiff is informed and believes and thereon alleges that on or about January 23, 2002, defendant Novinger filed a Limited Liability Company Certificate of Amendment declaring that he was the managing member of C1R Distributions.  (A true and correct copy of the Limited Liability Company Certificate of Amendment is attached hereto as **Exhibit "B"** and incorporated herein by this reference.)

10.     Plaintiff is informed and believes and thereon alleges that on or about February 20, 2002, defendant Novinger, the Debtor and an individual named Steven Walker signed an Operating Agreement, which purported to be effective January 9, 2002, and govern the management of C1R Distributions ("Operating Agreement").  According to the Operating Agreement, each member agreed to contribute cash or property to C1R Distributions as a capital contribution and C1R Distributions was to maintain separate capital accounts for each member. The Operating Agreement further provided that members were entitled to Distributable Cash at the discretion of the members after payment of all operating expenses and all outstanding and unpaid current obligations of C1R Distributions of the company at that time, with members receiving distributions to the extent of, and in proportion to, their capital contributions.  (A true and correct copy of the Operating Agreement is attached hereto as **Exhibit "C"** and incorporated herein by this reference.)

11.     Plaintiff is informed and believes and thereon alleges that sometime between April 13, 2004 and January 1, 2012, Hot Box Graphics, Inc., a California corporation, ("Hot Box")

1  became a 20 percent owner member of C1R Distributions.  Plaintiff is informed and believes and

2  thereon alleges that the Debtor is the sole owner of Hot Box.

3       12.    Plaintiff is informed and believes and thereon alleges that sometime between June

4  7, 2005 and January 1, 2012, defendant C1R, Inc. became the majority managing member of C1R

5  Distributions with a 40 percent ownership share in C1R Distributions.  Plaintiff is informed and

6  believes and thereon alleges that defendant Novinger is the Chief Executive Officer and Chief

7  Financial Officer of C1R, Inc. and controls C1R, Inc.  (A true and correct copy of C1R, Inc.'s

8  Statement of Information is attached hereto as **Exhibit "D"** and incorporated herein by this

9  reference.)

10       13.    Plaintiff is informed and believes and thereon alleges that sometime between May

11  20, 2011 and January 1, 2012, Extroversive Technologies, Inc., a California corporation,

12  ("Extroversive") became a 20 percent minority owner member of C1R Distributions.

13       14.    Plaintiff is informed and believes and thereon alleges that sometime between

14  January 9, 2002, to January 1, 2012, Chi Chi La Rue, Inc. ("CCLR") became a 20 percent

15  minority owner member of C1R Distributions.

16       15.    Plaintiff is informed and believes and thereon alleges that as of December 31, 2012,

17  Hot Box had a capital account balance of $168,564, after payment of a $45,000 distribution from

18  C1R Distributions.

19       16.    Plaintiff is informed and believes and thereon alleges that on or about January 1,

20  2013, C1R Distributions sold part of its business to defendant, Rascal for a loan of $1,018,000.

21  ("Loan 1") Plaintiff is further informed and believes that C1R Distributions reported in its 2013

22  tax return that it received $50,648 from Rascal on account of Loan 1 in 2013 and, of that amount,

23  C1R Distributions reported that $11,215.40 was distributed to Hot Box on or about December 31,

24  2013.  Plaintiff is informed and believes and thereon alleges that Hot Box never received the

25  $11,215.40 that was reported in C1R Distributions' 2013 tax return.

26       17.    Plaintiff is informed and believes and thereon alleges that on or about January 1,

27  2014, C1R Distributions sold the remaining portion of its business to Rascal for an additional loan

28  of $251,746.  ("Loan 2" and collectively referred to herein with Loan 1 as the "Loans")  Plaintiff

1   is informed and believes and thereon alleges that as of December 31, 2014, the amount due on the

2   Loans totaled $1,220,311.90.  Plaintiff is further informed and believes and thereon alleges that in

3   2014, C1R Distributions reported that it received $63,173.64 from Rascal on account of the Loans

4   and reported that $14,020.63 was distributed to Hot Box on or about December 31, 2014.  Plaintiff

5   is informed and believes and thereon alleges that Hot Box never received the $14,020.63 that was

6   reported in C1R Distributions' 2014 tax return.

7         18.    The Debtor filed a voluntary Chapter 7 petition on April 24, 2015.  ("Petition

8   Date")

9         19.    Plaintiff is informed and believes and thereon alleges that as of the Petition Date,

10   the balance on the loans due to C1R Distributions was $1,210,894.40.  Plaintiff is further informed

11   and believes and thereon alleges that in 2015, as of the Petition Date, C1R Distributions reported

12   that it received $21,058.06 from Rascal, of which, $4,682.49 was reported to have been paid to

13   Hot Box.  Plaintiff is informed and believes and thereon alleges that Hot Box never received the

14   $4,682.49 that was reported in C1R Distributions' 2015 tax return

15         20.    Plaintiff is informed and believes and thereon alleges that C1R Distributions

16   reported receiving $25,411.15 from Rascal after the Petition Date, of which, $5,775.27, was

17   reported to have been paid to Hot Box after the Petition Date.  Plaintiff is informed and believes

18   and thereon alleges that Hot Box never received the $5,775.27, that was reported in C1R

19   Distributions' 2015 tax return.

20         21.    Since the Petition Date, the Trustee has received no payments from C1R

21   Distributions on account of the Loans or from Hot Box's capital account, which was reported in

22   C1R Distributions' 2015 tax return to have a balance of $157,283, as of December 31, 2015.

23         22.    Plaintiff is informed and believes and thereon alleges that as of December 31, 2015,

24   Rascal owed Hot Box a 20 percent interest in the Loans, totaling $242,178.88.

25                             **FIRST CLAIM FOR RELIEF**
                              (Breach of Fiduciary Duty)

26                 (Against Defendants C1R, Inc. and Robert Novinger)

27         23.    The Trustee refers to and incorporates herein by reference each and every

28   allegation contained in paragraphs 1 through 22, inclusive, as though set forth fully herein.

1     24.    As the majority managing member of C1R Distributions, C1R, Inc. owed and

2  continues to owe to Hot Box, the Debtor and his Estate fiduciary duties of good faith, loyalty, and

3  care.

4     25.    As the majority shareholder of C1R, Inc. and by having control over Rascal and

5  C1R, Inc., defendant Novinger, owed and continues to owe to Hot Box, the Debtor and his Estate

6  fiduciary duties of good faith, loyalty, and care.

7     26.    Defendants C1R, Inc. and Novinger breached their fiduciary duties to Hot Box, the

8  Debtor and his Estate by engaging in conduct that constitutes gross negligence, reckless behavior,

9  intentional misconduct, and knowing violation of the law, including, without limitation, by

10  improperly (1) denying Hot Box distributions from Rascal's payments to C1R Distributions

11  totaling $29,918.52, prepetition, and a minimum sum of $5,775.27, postpetition; (2) failing to pay

12  any portion of Hot Box's capital account to Hot Box or the Debtor, which as of December 31,

13  2015, totaled $157,283; (3) failing to repay any part of the Loans due to Hot Box or the Debtor in

14  the amount of $242,178.88; and (4) engaging in actions solely meant to benefit themselves as the

15  majority and controlling owners of both C1R Distributions and Rascal.

16     27.    As a direct and proximate result of defendants C1R, Inc. and Novinger's breaches

17  of fiduciary duty, Hot Box, the Debtor and his Estate have been damaged in an amount to be

18  proven at trial, but in no event less than $435,155.67.

19     28.    Defendants C1R, Inc. and Novinger's conduct was a substantial factor in causing

20  the aforementioned damages.

21     29.    In committing the acts complained of herein, defendants C1R, Inc. and Novinger

22  acted with oppression, and malice, entitling the Trustee to the recovery of exemplary damages in

23  an amount to be proven at trial.

24

25                  **SECOND CLAIM FOR RELIEF**
                   (Aiding and Abetting Breach of Fiduciary Duty)

26          (Against Defendants Robert Novinger, Rascal Video, LLC)

27     30.    The Trustee refers to and incorporates herein by reference each and every

28  allegation contained in paragraphs 1 through 29, inclusive, as though set forth fully herein.

31.     To the extent that defendant, Robert Novinger did not individually hold a fiduciary duty to Hot Box, the Debtor and his Estate, defendant Novinger, as the controlling shareholder of C1R, Inc., and Rascal, knew that C1R, Inc. would breach, and was breaching, its fiduciary duties owed to Hot Box and the Debtor by engaging in conduct that constitutes gross negligence, reckless behavior, intentional misconduct, and knowing violation of the law, including, without limitation, by improperly (1) denying Hot Box distributions from Rascal's payments to C1R Distributions totaling $29,918.52, prepetition, and a minimum sum of $5,775.27, postpetition; (2) failing to pay any portion of Hot Box's capital account to Hot Box or the Debtor, which as of December 31, 2015, totaled $157,283; (3) failing to repay any part of the Loans due to Hot Box or the Debtor in the amount of $242,178.88; and (4) engaging in actions solely meant to benefit themselves as the majority and controlling owners of both C1R Distributions and Rascal.

32.     Defendants Novinger and Rascal gave substantial assistance and aided and abetted in the breach of fiduciary duties as alleged herein.

33.     As a direct and proximate result of defendants Rascal and Novinger's conduct, Hot Box, the Debtor and his Estate have been damaged in an amount to be proven at trial, but in no event less than $435,155.67.

34.     Defendants C1R, Inc. and Rascal's conduct was a substantial factor in causing the aforementioned damages.

35.     In committing the acts complained of herein, defendants Rascal and Novinger acted with oppression, and malice, entitling the Trustee to the recovery of exemplary damages in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
(Breach of Written Agreement)
(Against Defendants C1R, Inc. and Robert Novinger)

36.     The Trustee refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 35, inclusive, as though set forth fully herein.

37.     Hot Box and Defendants C1R, Inc. and/or Robert Novinger were parties to the Operating Agreement, which provided that members were entitled to distributions in proportion to

1  their capital contributions.

2      38.    Defendants C1R, Inc. and/or Robert Novinger breached the Operating Agreement

3  by failing to pay Hot Box, prepetition, and now the Debtor's estate, postpetition, what Hot Box

4  and Debtor were entitled to be paid for Rascal repayments on the Loans and by failing to pay any

5  portion of Hot Box's capital account to Hot Box or the Debtor, which as of December 31, 2015,

6  totaled $157,283 and failing to pay any part of the Loans due to Hot Box or the Debtor in the

7  amount of $242,178.88.

8      39.    Hot Box and Debtor duly performed or was excused from performing all terms and

9  conditions of Operating Agreement, on their part to be performed.

10      40.    As a direct and proximate result of defendants C1R, Inc. and Novinger's conduct,

11  Hot Box, the Debtor and his Estate have been damaged in an amount to be proven at trial, but in

12  no event less than $435,155.67.

**FOURTH CLAIM FOR RELIEF**
13  *(Conversion)*
*(Against All Defendants)*

14

15      41.    The Trustee refers to and incorporates herein by reference each and every

16  allegation contained in paragraphs 1 through 40, inclusive, as though set forth fully herein.

17      42.    Hot Box and Debtor, and now the Trustee, owns and has a right to possess the

18  $35,693.79 in unpaid distribution payments, the approximately $157,283 from Hot Box's capital

19  account, and $242,178.88 of the loan obligation owed by Rascal to C1R Distributions.

20  (collectively the "Property").

21      43.    Defendants intentionally and substantially interfered with the Property by taking

22  possession of the Property, preventing the Plaintiff from having access to the Property, and/or

23  refusing to return the Property.

24      44.    The Plaintiff did not consent to the conversion of the Property.

25      45.    As a direct and proximate cause of Defendants' conduct, Plaintiff has been

26  damaged in an amount no less than $435,155.67.

27      46.    Defendants' conduct was a substantial factor in causing the Plaintiff harm.

28

47.     In committing the acts complained of herein, Defendants acted with oppression, and malice, entitling the Trustee to the recovery of exemplary damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Turnover and Accounting)
### (Against Defendant C1R Distributions, LLC)

48.     The Trustee refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 47, inclusive, as though set forth fully herein.

49.     The distributions due to Hot Box in the amount of $29,918.52, prepetition, and a minimum sum of $5,775.27, postpetition (collectively the "Distributions") and Hot Box's capital account, which as of December 31, 2015, totaled $157,283, ("Capital Account") constitutes property of the estate for which the Debtor has a legal or equitable interest as of the commencement of his bankruptcy proceeding.

50.     Defendant C1R Distributions has custody, possession and control over the Distributions and Capital Account and is subject to the requirements of 11 U.S.C. §542(a).

51.     An accounting is further necessary to determine how money from Rascal was distributed to the other members, if at all, and the current status of the Capital Account, and other information needed to determine all legal and equitable interests of the Debtor and Hot Box in C1R Distributions.

52.     As a consequence, Plaintiff requests a judgment requiring C1R Distributions to turnover the Distributions in the minimum sum of $35,693.79, and the Capital Account in the minimum sum of $157,283 and provide an accounting of the financial dealings of C1R Distributions.

**WHEREFORE,** the Trustee prays for the following relief:

**ON THE FIRST AND SECOND CLAIMS FOR RELIEF**

A.     Damages according to proof, but in the minimum sum of $435,155.67.

B.     Exemplary damages in an amount to be proven at trial.

**ON THE THIRD CLAIM FOR RELIEF**

A. Damages according to proof, but in the minimum sum of $435,155.67.

1  **ON THE FOURTH CLAIM FOR RELIEF**

2      A.  Damages according to proof, but in the minimum sum of $435,155.67.

3      B.  Exemplary damages in an amount to be proven at trial.

4  **ON THE FIFTH CLAIM FOR RELIEF**

5      For turnover of property of the estate in the amount of $192,976.79 and for an accounting.

6  **ON ALL CLAIMS FOR RELIEF**

7      A.    For Interest at the maximum legal rate;

8      B.    For Costs and expenses; and

9      C.    Such other and further relief as the Court deems just and proper.

10

11  Dated: April 24, 2017                DUMAS & KIM, APC

12

13                         By: _____

                       Christian T. Kim, Attorneys for Plaintiff and

14                         Chapter 7 Trustee, Sam S. Leslie

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

# EXHIBIT "A"



# State of California
# Bill Jones
## Secretary of State

### LIMITED LIABILITY COMPANY
### ARTICLES OF ORGANIZATION

**A $70.00 filing fee must accompany this form.**
**IMPORTANT – Read instructions before completing this form.**

File# 200201610143

**ENDORSED - FILED**
In the office of the Secretary of State
of the State of California

**JAN 0 9 2002**

**BILL JONES, Secretary of State**

This Space For Filing Use Only

---

1. Name of the limited liability company  (end the name with the words "Limited Liability Company," " Ltd. Liability Co.," or the abbreviations "LLC" or "L.L.C.")
   CR1 Distribution, LLC

2. The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the Beverly-Killea limited liability company act.

3. Name the agent for service of process and check the appropriate provision below:
   S. Christopher Winter                                                                    which is

   [X] an individual residing in California.  Proceed to item 4.

   [ ] a corporation which has filed a certificate pursuant to section 1505.  Proceed to item 5.

4. If an individual, California address of the agent for service of process:
   Address: 9021 Melrose Ave., Suite 201
   City: West Hollywood                    State: CA                    Zip Code: 90069

5. The limited liability company will be managed by:  (check one)
   [ ] one manager  [X] more than one manager  [ ] single member limited liability company  [ ] all limited liability company members

6. Other matters to be included in this certificate may be set forth on separate attached pages and are made a part of this certificate. Other matters may include the latest date on which the limited liability company is to dissolve.

7. Number of pages attached, if any:

8. Type of business of the limited liability company. (For informational purposes only)
   Wholesale video distribution

9. DECLARATION: It is hereby declared that I am the person who executed this instrument, which execution is my act and deed.

   *Lisa Willoughby* (signature)
   Signature of Organizer

   Lisa Willoughby
   Type or Print Name of Organizer

   January 9, 2002
   Date

---

10. RETURN TO:
    NAME    S. Christopher Winter
    FIRM    Law Offices of S. Christopher Winter
    ADDRESS    9021 Melrose Ave., Suite 201
    CITY/STATE    West Hollywood, Ca
    ZIP CODE    90069

SEC/STATE (REV. 12/99)

FORM LLC-1 – FILING FEE $70.00
Approved by Secretary of State

# EXHIBIT "B"

# EXHIBIT "B"



# State of California
## Bill Jones
## Secretary of State

**ENDORSED - FILED**
in the office of the Secretary of State
of the State of California

**JAN 2 3 2002**

BILL JONES, Secretary of State

## LIMITED LIABILITY COMPANY
## CERTIFICATE OF AMENDMENT

A $30.00 filing fee must accompany this form
**IMPORTANT – Read instructions before completing this form.**

This Space For Filing Use Only

| 1. Secretary of State File Number: | 2. Name of Limited Liability Company: |
|---|---|
| 200201610143 | CR1 Distribution, LLC |

3. **Complete only the sections where information is being changed. Additional pages may be attached if necessary.**

   A. Limited Liability Company Name (end the name with the words "Limited Liability Company," "Ltd. Liability Co." or the abbreviations "LLC" or "L.L.C.")
      C1R Distribution, LLC

   B. The Limited Liability Company will be managed by (Check One):

[ ] one manager   [ ] more than one manager   [ ] single member limited liability company   [X] all limited liability company members

   C. Amendment to text of the Articles of Organization:

   D. Other matters to be included in this certificate may be set forth on separate attached pages and are made a part of this certificate. Other matters may include a change in the latest date on which the limited liability company is to dissolve or any change in the events that will cause the dissolution.

| 4. Future Effective Date, if any: | Month | Day | Year |
|---|---|---|---|

5. Number of pages attached, if any:

6. **Declaration:** It is hereby declared that I am the person who executed this instrument, which execution is my act and deed.

_____
Signature of Authorized Person

Robert Noyner
Member / Manager
Type or Print Name and Title

1/29/02
Date

7. **RETURN TO:**

NAME      S. Christopher Winter
FIRM       Law Offices of S. Christopher Winter
ADDRESS   9021 Melrose Ave., Suite 201
CITY/STATE West Hollywood, CA
ZIP CODE  90069

SEC/STATE (REV. 12/99)

FORM LLC-2 – FILING FEE: $30.00
Approved by Secretary of State

# EXHIBIT "C"

# EXHIBIT "C"

# C1R DISTRIBUTING, LLC
## OPERATING AGREEMENT
### TABLE OF CONTENTS

**Article I** ......................................................................................................................... 1

1.1  Formation. .................................................................................................................. 1

1.2  Nature of Members' Interests. .................................................................................... 1

**Article II** ........................................................................................................................ 1

2.1  Names and Addresses of Members. ........................................................................... 1

2.2  Meetings of Members. ............................................................................................... 1

**Article III** ...................................................................................................................... 1

3.1  Management. .............................................................................................................. 1

3.2  Restrictions on Managers Authority. ......................................................................... 2

3.3  Compensation. ........................................................................................................... 2

3.4  Meetings of Managers. .............................................................................................. 2

3.5  Meetings of Managers. .............................................................................................. 2

3.6  Notice of Meetings. ................................................................................................... 2

3.7  Quorum; Action by Managers. .................................................................................. 2

3.8  Action Without a Meeting. ........................................................................................ 2

**Article IV** ...................................................................................................................... 2

4.1  Voluntary Transfers. .................................................................................................. 3

4.2  Involuntary Transfers. ............................................................................................... 3

4.3  Method of Determining Purchase Value. .................................................................. 3

4.4  Payment of Purchase Value. ...................................................................................... 3

4.5  Admission of New Members. ..................................................................................... 4

**Article V** ....................................................................................................................... 4

5.1  Limitation of Liability. .............................................................................................. 4

5.2  Indemnification. ......................................................................................................... 4

**Article VI** ...................................................................................................................... 4

6.1  Capital Contributions; Loans. ................................................................................... 4

6.2  Capital Accounts. ...................................................................................................... 4

6.3  Allocation of Taxable Income and Tax Losses. ........................................................ 5

C1R DISTRIBUTING, LLC
OPERATING AGREEMENT
TABLE OF CONTENTS

| 6.4 | Compliance with Tax Code. | 6 |
|---|---|---|
| 6.5 | Company Tax Returns and Annual Statements. | 6 |
| 6.6 | Tax Matters Member. | 6 |
| 6.7 | Withdrawal or Reduction of Contributions to Capital. | 6 |

**Article VII** ... **6**

| 7.1 | Distributions. | 6 |
|---|---|---|
| 7.2 | Records and Reports; Books of Account. | 7 |
| 7.3 | Bank Accounts. | 7 |
| 7.4 | Liability of Members. | 7 |

**Article VIII** ... **7**

| 8.1 | Withdrawal. | 7 |
|---|---|---|
| 8.2 | Dissolution. | 7 |
| 8.3 | Distribution of Assets Upon Dissolution. | 8 |

**Article IX** ... **8**

| 9.1 | Competing Business. | 8 |
|---|---|---|
| 9.2 | Notice. | 8 |
| 9.3 | Governing Law. | 8 |
| 9.4 | Waiver. | 8 |
| 9.5 | Benefits of Agreement. | 9 |
| 9.6 | Entire Agreement; Amendments; Severability; General. | 9 |

Exhibit A ... 10

Table of Membership Interests ... 10

ii

# C1R DISTRIBUTING, LLC
## OPERATING AGREEMENT

THIS OPERATING AGREEMENT (the "Agreement") of C1R Distributing, LLC (the "Company"), a limited liability company organized pursuant to the Beverly-Killea Limited Liability Company Act (the "Act"), is executed effective as of the 9th day of January 2002, by and among the Organizing and Initial Members.

## Article I
## Formation of the Company

**1.1    Formation.** The parties hereto hereby establish C1R Distributing, LLC to engage in any lawful business for which limited liability companies may be organized under the Beverly-Killea Limited Liability Company Act as the same may be amended from time to time. The principal place of business of the Company shall be at 8721 Santa Monica Blvd. #525, West Hollywood, CA 90069 or such other place, as the Members shall determine from time to time.

**1.2    Nature of Members' Interests.** The interests of the Members in the Company shall be personal property for all purposes. Legal title to all Company assets shall be held in the name of the Company. Neither any Member nor a successor, representative or assign of such Member, shall have any right, title or interest in or to any Company property or the right to partition any real property owned by the Company.

## Article II
## Members

**2.1    Names and Addresses of Members.** The names, addresses, and Membership Interests of the Initial Members, following the admission of Initial Members by the Organizing Members, are as reflected in Exhibit A attached hereto and made a part hereof, which Exhibit shall be as amended by the Company as of the effective date of any redemption or issuance of any Membership Interest.

**2.2    Meetings of Members.** The Members of the Company shall hold their meetings, both regular and special, according to such Bylaws as they may adopt from time to time.

## Article III
## Management of the Company

**3.1    Management.** The Managers, who shall be elected by the Members and shall serve at their pleasure thereafter, shall manage the business and affairs of the Company. In addition to the powers and authorities expressly conferred by this Agreement upon the Managers, they shall have full and complete authority, power and discretion to manage and control the business of the Company, to make all decisions and to perform all acts customary or incident to the management of the Company's business, except only as to those acts and things as to which approval by the Members is expressly required by the Articles of Organization, this Agreement, the Act or other applicable law. Any one Manager may take any action permitted to be taken by the Managers, unless the approval of more than one of the Managers is expressly required pursuant to this Agreement or the Act. The Managers may elect one or more officers, who may, but need not be, Members of the Company, with such titles,

C1R DISTRIBUTING, LLC
OPERATING AGREEMENT

duties and compensation as may be designated by the Managers, subject to any applicable restrictions specifically provided in this Agreement or contained in the Act.

**3.2     Restrictions on Managers Authority.** Notwithstanding anything to the contrary elsewhere in this Agreement, no Manager shall take or agree to take any of the following actions without the consent of all the Members:

  (a)   Sell, transfer, or otherwise dispose of all or substantially all of the Company's assets.

  (b)   Merge the Company into or with another limited liability company.

**3.3     Compensation.** The compensation of the Managers shall be fixed from time to time by an affirmative vote of a majority in interest of the Members, or by contract approved by an affirmative vote of a majority in interest of the Members. No Manager shall be prevented from receiving such compensation by reason of the fact that he or she is also a Member of the Company.

**3.4     Meetings of Managers.** The Managers of the Company shall hold their meetings, both regular and special, according to the following bylaws:

**3.5     Meetings of Managers.** In the event the Company has more than one manager, the Managers may hold meetings, both regular and special, for the conduct of the Company's business at the principal office of the Company or at such other place as shall be designated in the notice of the meeting.

**3.6     Notice of Meetings.** The Managers may meet at such intervals and at such times, as they shall schedule. Any scheduled meetings of Managers may be held without notice. Special meetings of the Managers may be called at any time by no less than one-third of the then serving Managers for any purpose or purposes. Notice of such special meetings, unless waived by attendance, or by written consent to the holding of the special meeting, shall be given at least five (5) days before the date of such meeting to all Managers not calling the meeting, and shall state the date, hour, and location of the special meeting, and its purpose or purposes. Absent the written consent of a majority of the Managers to take other action, the business transacted at such special meeting shall be limited to such purpose or purposes as stated in the notice.

**3.7     Quorum; Action by Managers.** A majority of the Managers shall be necessary to constitute a quorum for the transaction of business. Every act or decision done or made by a Majority of the Managers present at a meeting duly held at which a quorum is present shall be regarded as the act of the Company, unless a greater number is required by law or by the Articles of Organization. A majority of the Managers present may adjourn any Managers' meeting to meet again at a stated date and hour.

**3.8     Action Without a Meeting.** Any action which under any provision of the Act or this Agreement is to be taken at a meeting of the Managers may be taken without a meeting by written consent signed by all Managers who would be entitled to vote upon such action at a meeting. Such written consent must be kept with the records of the Company.

### Article IV
### Transferability of Membership Interests

No Membership Interest shall be transferred voluntarily or involuntarily by sale, assignment, gift, pledge, exchange or other disposition, except as provided hereinbelow.

2

C1R DISTRIBUTING, LLC
OPERATING AGREEMENT

**4.1    Voluntary Transfers.** No Membership Interest shall be transferred voluntarily by sale, assignment, gift, pledge, exchange or other disposition, except as provided in Paragraph 4.1 of this Agreement, or with the prior written approval of the Members. The Members acknowledge that any transfer of a Membership Interest may involve considerations of laws and regulations, including, but not limited to, laws and regulations governing limited liability companies as business organizations, taxation of the Company as a partnership, and treatment of Membership Interests and transfers of such interests as securities, the effect of which on the Company and its Members may vary depending on the circumstances, all of which cannot be anticipated at this time. Therefore, the Members agree that the Members may approve or disapprove, or set conditions on approval, of the transfer of any Membership Interest as the Members, in their sole and complete discretion, may decide, provided, however, that the Members may not approve any transfer that will violate any Federal or applicable state securities law or that would adversely affect the Company from being taxed as a partnership for Federal income tax purposes. Any attempted transfer without the Members express written approval shall be void.

**4.2    Involuntary Transfers.** If the Membership Interest of any Member is purported to be transferred involuntarily, including, without limitation, any purported transfer by or pursuant to bankruptcy, receivership, attachment, divorce, equitable distribution, inheritance or operation of law; then, and in that event, the Company shall purchase the Membership Interest purportedly transferred at its Purchase Value as determined as provided in Paragraph 4.3 hereinbelow.

**4.3    Method of Determining Purchase Value.**

(a) Purchase Value as used herein shall mean the Purchase Value of the Membership Interests of the Company established by a Certificate of Agreed Value signed by each Member and filed with the Company. If, at any time when it becomes necessary to determine Purchase Value of the Membership Interests of the Company, a Certificate of Agreed Value is in existence and such certificate of agreed value is dated less than two (2) years before the date as of which the Purchase Value is to be determined, then the agreed value set forth in such certificate shall be conclusive as to the Purchase Value and shall be accepted as the Purchase Value as of the date on which Purchase Value is to be determined, and no accountant's determination of book value shall be required or made. In no event shall a Certificate of Agreed Value be effective unless signed by all the Members. The Members may at any time execute a new Certificate of Agreed Value, which shall automatically replace all prior Certificates of Agreed Value and in no event shall any but the last Certificate of Agreed Value be effective, if at all, for the purpose herein specified.

(b) In the event there is no Certificate of Agreed Value or in the event the same is more than two (2) years old, then the Purchase Value of a Membership Interest for the purposes of this Agreement shall be the amount that would be received by the owner of such Membership Interest if all the assets of the Company were sold for cash equal to their fair market value, the Company paid all of its liabilities including reasonable costs of liquidation, and liquidated in accordance with this Agreement, all as of the last day of the calendar month immediately prior to the occurrence of the event triggering the Company's obligation to purchase the Members Membership Interest. The determination of the fair market value of a Membership Interest by the accountant shall be binding on all parties.

**4.4    Payment of Purchase Value.** Whenever under this Agreement the Company exercises any option or right to redeem or purchase Membership Interests of any Member, the Purchase Value shall

3

CIR DISTRIBUTING, LLC
OPERATING AGREEMENT

be paid to the Member whose Membership Interests have been redeemed or purchased in cash within thirty (30) days after notice to the affected Member.

**4.5    Admission of New Members.** Unless and until admitted as a Member of the Company, the transferee of a Membership Interest shall not be entitled to any of the rights, powers, or privileges of a Member, except that the transferee shall be entitled to receive the distributions and allocations to which the Member would be entitled but for the transfer of his Membership Interest.

In the case of a person acquiring a Membership Interest after the admission of Initial Members, the person shall only be admitted to Membership in the sole and exclusive discretion of the Members and upon compliance with all the terms specified by the Members, including but not limited to such additional Member's execution of and becoming a party to this Agreement.

## Article V
## Limitation of Liability and Indemnification of Members

**5.1    Limitation of Liability.** No Member of the Company shall be liable to the Company or its Members for monetary damages for any act or omission in such person's capacity as a Member, except as provided in the Act. If the Act is amended to authorize action further eliminating or limiting the liability of Members, then the liability of a Member shall be eliminated or limited to the fullest extent permitted by the Act as so amended. Any repeal or modification of this section shall not adversely affect the right or protection of a Member existing at the time of such repeal or modification.

**5.2    Indemnification.** The Company shall indemnify the Members to the fullest extent permitted or required by the Act, as amended from time to time. The Company may advance expenses incurred by the Members upon the approval of the Members, provided such Member agrees to reimburse the Company unless it is finally determined that such Member is entitled to be indemnified by the Company against such expenses. The Company may also indemnify its employees and other agents to the fullest extent permitted by the law, provided that a Majority in Interest of the Members first approves such indemnification. The indemnification provided herein shall be deemed exclusive of any other rights to which a person seeking indemnification may otherwise be entitled, shall continue as to a person who ceases to be a Member, shall inure to the benefit of the estate, heirs, personal representatives or other successors of the indemnitee, and shall not be deemed to create any rights for the benefit of any other person or entity.

## Article VI
## Capital Accounts and Tax Matters

**6.1    Capital Contributions; Loans.** Upon execution of this Agreement, each Initial Member agrees to contribute cash or property to the Company in the amount set forth on Exhibit A attached hereto.

Any Member may make a loan to the Company upon commercially reasonable terms, upon approval of such terms by the Members. Loans by a Member shall not be considered capital contributions.

**6.2    Capital Accounts.** The Company shall maintain a separate capital account for each Member pursuant to the principles of this section and applicable Treasury Regulations. The initial capital account of each Member, which shall be the Member's initial capital contribution, shall be increased

4

CIR DISTRIBUTING, LLC
OPERATING AGREEMENT

by the amount of such Member's subsequent capital contributions and by such Member's allocable share of Company Income and Net Income as hereinafter provided, and each Member's capital account shall be decreased by the amount of cash distributed to the Member by the Company and by such Member's allocable share of Loss and Net Loss as hereinafter provided.

**6.3      Allocation of Taxable Income and Tax Losses.**  Taxable Income and Tax Losses of the Company for each fiscal year shall be determined as of the end of each fiscal year and shall be allocated as set forth hereinbelow:

For purposes of this Agreement, net profits or net losses shall be determined as required by the regulations promulgated under Section 704 of the Internal Revenue Code, as it may be amended from time to time. Taxable Income and Tax Losses of the Company for each fiscal year shall be determined as of the end of each fiscal year and shall be allocated as hereinbelow set forth, and shall be subject to the rules for special allocations set forth in Paragraph 6.2 hereof.

(a)  Taxable Income shall first be allocated to the Members to the extent of, and in proportion to, the excess of prior cumulative allocations of Tax Losses over prior cumulative allocations of Taxable Income.

(b)  The balance of Taxable Income shall then be allocated to the Members in proportion to their Capital Accounts.

(c)  Tax Losses shall first be allocated to the Members to the extent of, and in proportion to, the excess of prior cumulative allocations of Taxable Income over prior cumulative allocations of Tax Losses.

(d)  The balance of Tax Losses shall be allocated in proportion to the Capital Contributions of the Members, until any Members Capital Account is reduced to zero (0).

(e)  To the extent remaining, Tax Losses shall be allocated to the Members in proportion to their adjusted tax basis in the Company as determined for Federal income tax purposes.

(f)  Notwithstanding the foregoing provisions, if Taxable Income to be allocated includes income treated as ordinary income for income tax purposes because it is attributable to the recapture of Depreciation and/or Amortization under Section 1245 or Section 1250 of the Internal Revenue Code, or any other similar provision, such Taxable Income, to the extent it is treated as ordinary income, shall be allocated to and reported by the Members in proportion to their accumulated depreciation allocations, and the Company shall keep records of such allocations.

(g)  In the event of a transfer of, or other change in, an interest in the Company during a fiscal year, each item of taxable income or loss shall be prorated in accordance with Section 706 of the Internal Revenue Code, using any convention permitted by law and selected by the Members.

(h)  Notwithstanding any other provisions of this Agreement to the contrary, no allocation of any item of income or loss shall be made to a Member if such allocation would not have economic effect pursuant to Treasury Regulations. To the extent an allocation cannot be made to a Member due to the application of such Treasury Regulations, such allocation shall be made to the other Members entitled to receive such allocation hereunder.

5

C1R Distributing, LLC
Operating Agreement

**6.4    Compliance with Tax Code.** Each Member hereby recognizes that the Company will be subject to all provisions of Subchapter X of the Internal Revenue Code. The provisions of this Agreement relating to the proper maintenance of capital accounts and allocation of income, gains, deductions, and losses are designed to cause the overall allocations of items to have substantial economic effect and are intended to comply with, and to be interpreted and applied in a manner consistent with the requirements of applicable Treasury Regulations, as they may be amended from time to time. The Members are authorized to modify the manner in which the capital accounts are maintained and items of income, gain, deductions, and losses are allocated if they determine that such modification is required or prudent to comply with the Treasury Regulations, and is not likely to have a material effect on the amounts distributable to any Member upon dissolution of the Company.

**6.5    Company Tax Returns and Annual Statements.** The Members shall cause the Company to file all tax returns required to be filed for the Company for each fiscal year or part thereof, and shall provide each person who at any time during the fiscal year was a Member with an annual statement (including a copy of Schedule K-1 to Internal Revenue Service Form 1065) indicating such Member's share of the Company's income, loss, gain, expense and other items relevant for income tax purposes. Such annual statement may be audited or unaudited as required by the Members.

**6.6    Tax Matters Member.** One of the Members who is also a Member shall act as the "Tax Matters Member" for Federal and state income tax purposes. The Tax Matters Member shall have the final decision with respect to all Federal and state income tax matters involving the Company, and shall represent the Company in connection with all examinations of the Company's affairs by tax authorities, including resulting administrative and judicial proceedings. The Members agree to cooperate with the Tax Matters Member and to do or refrain from doing any and all things reasonably required by the Tax Matters Member to conduct such proceedings. The Tax Matters Member is authorized to expend Company funds for professional services and costs associated with tax matters. Any direct out-of-pocket expense incurred by the Tax Matters Member in carrying out the obligations hereunder shall be reimbursed by the Company.

**6.7    Withdrawal or Reduction of Contributions to Capital.** No Member shall have the right to withdraw any part of his capital contribution or to receive any return on any portion of his capital contribution, except as may be otherwise specifically provided in this Agreement. Under circumstances involving a return of any capital contribution, no Member shall have the right to receive property other than cash. No Member shall have priority over any other Member, either as to the return of capital contributions or as to net income, net losses or distributions; provided that this subsection shall not apply to loans that a Member has made to the Company.

## Article VII
### Distributions

**7.1    Distributions.** The Members shall distribute Distributable Cash and other property at such times and in such amounts as may be determined, in the sole discretion of the Members. "Distributable Cash" means, with respect to the Company for a period of time, all funds of the Company which, in the discretion of the Members, are available for distribution to Members after provision has been made for payment of all operating expenses and of all outstanding and unpaid current obligations of the Company as of such time, and for such reserves as the Members deem appropriate or necessary.

Distributable Cash shall be distributed on a cumulative basis, as follows:

6

C1R DISTRIBUTING, LLC
OPERATING AGREEMENT

(a) First, to the Members to the extent of, and in proportion to, their Capital Contributions.

(b) Then, to the Members to the extent of, and in proportion to, prior cumulative allocations of Taxable Income over cumulative allocations of Tax Losses.

(c) Then, the Members in a manner similar to the allocations set forth in Paragraph 1.

(d) No distribution shall be declared and paid if payment of such distribution would cause the Company to violate any limitation on distributions provided in the Act.

**7.2     Records and Reports; Books of Account.** The Company shall maintain the Company's books and records and shall determine all items of income, loss, net income and net loss in accordance with the method of accounting selected by the Members, consistently applied. All records and books of account of the Company, in whatever form maintained, shall be kept at the principal office of the Company at all times and shall be open to inspection of the Members or their agents during reasonable business hours. Such right may be exercised on behalf of a Member by an attorney, certified public accountant, or any other agent or employee designated by such Member. Such Member shall bear all expenses incurred in any examination made on behalf of such Member. All expenses of keeping the books and records of the Company and the preparation of financial statements required to implement the provisions of this Agreement or otherwise needed for the conduct of the Company's business shall be borne by the Company.

**7.3     Bank Accounts.** The Bank account or accounts of the Company shall be maintained in the bank or other financial institution approved by the Members. The terms governing such accounts shall be determined by the Members, and withdrawals from such accounts shall only be made by such parties as may be approved by the Members.

**7.4     Liability of Members.** No Member shall be liable for the debts, liabilities or obligations of the Company, except to the extent of the Member's capital contributions. Except as otherwise expressly provided herein, no Member shall be required to contribute to the capital of, or to loan any funds to, the Company.

## Article VIII
## Dissolution and Termination

**8.1     Withdrawal.** Except as otherwise provided in this Agreement, no Member shall at any time retire or withdraw from the Company or withdraw any amount out of his capital account. Any Member retiring or withdrawing in contravention of this section shall indemnify, defend and hold harmless the Company and all other Members (other than a Member who is, at the time of such withdrawal, in default under this Agreement) from and against any losses, expenses, judgments, fines, settlements or damages suffered or incurred by the Company or any such other Member arising out of or resulting from such retirement or withdrawal.

**8.2     Dissolution.** The Company shall be dissolved upon the first of the following to occur: (i) expiration of the period fixed for the duration of the Company in the Articles of Organization as amended; (ii) election by all the Members to dissolve the Company; (iii) the happening of any event of withdrawal (as defined by the North Carolina Limited Liability Company Act) with respect to any Member, unless there is at least one remaining Member and the business of the Company is continued by written consent of all the remaining  Members holding a Majority in Interest within ninety (90)

7

C1R DISTRIBUTING, LLC
OPERATING AGREEMENT

days of the action by or affecting the withdrawing Member; or (iv) the entry of a decree of judicial dissolution or the issuance of a certificate for administrative dissolution under the Act.

Upon dissolution of the Company, the business and affairs of the Company shall terminate and be wound up and the assets of the Company shall be liquidated, provided, however, that the Members may distribute assets of the Company in kind to the Members to the extent practical. Dissolution shall be effective as of the day on which the event occurs giving rise to the dissolution, but the Company shall not terminate until there has been a winding up of the Company's business and affairs, and the assets of the Company have been distributed.

**8.3    Distribution of Assets Upon Dissolution.** In settling accounts after dissolution, the assets of the Company shall be paid in the following order: first, to creditors, in order of priority as provided by law including any loans to the Company from Members, but excepting those to Members on account of their capital contributions; second, an amount equal to the then remaining credit balances in the capital accounts of the Members shall be distributed to the Members in proportion to the amount of such balances; and third, any remainder shall be distributed to Members of the Company, pro rata to their respective Membership Interests.

## Article IX
## Miscellaneous Provisions

**9.1    Competing Business.** Except as otherwise expressly provided in this Agreement or the Act, neither the Members nor their shareholders, directors, officers, employees, partners, agents, family members or affiliates, shall be prohibited or restricted from investing in or conducting, either directly or indirectly, businesses of any nature whatsoever, including the ownership and operation of businesses similar to or in the same geographical area as those held by the Company; and any investment in or conduct of any such businesses by any such person or entity shall not give rise to any claim for an accounting by any Member or the Company or any right to claim any interest therein or the profits therefrom.

**9.2    Notice.** All Notices, demands or requests provided for or permitted to be given pursuant to this Agreement must be in writing. All notices, demands and requests to be sent to any Member or Members pursuant to this Agreement shall be deemed to have been properly given or served if addressed to such person at the address as it appears on the Company records and personally delivered, deposited for next day delivery by an overnight courier service, deposited in the United States mail, prepaid and registered or certified with return receipt requested, or transmitted via telecopier or other similar device to the attention of such person with receipt acknowledged.

The Members shall have the right, at any time during the term of this Agreement, to change their respective addresses by delivering to the other Members written notice of such change. All distributions to any Member shall be made at the address to which notices are sent unless otherwise specified in writing by any such Member.

**9.3    Governing Law.** This Agreement shall be interpreted, construed and enforced in accordance with the laws of the State of California.

**9.4    Waiver.** No consent or waiver, express or implied, by any Member to or for the breach or default by any other Member in the performance by such other Member of his or its obligations under this Agreement shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other Member of the same or any other obligations of such other

8

**C1R DISTRIBUTING, LLC**
**OPERATING AGREEMENT**

Member under this Agreement. Failure on the part of any Member to complain of any act or failure to act of any of the other Members or to declare any of the other Members in default, regardless of how long such failure continues, shall not constitute a waiver by such Member of his or its rights hereunder.

**9.5      Benefits of Agreement.** Subject to the restrictions on transferability set forth in this Agreement, this Agreement shall inure to the benefit of and be binding upon the undersigned Members and their respective legal representatives, successors and assigns. Nothing in this Agreement, expressed or implied, is intended or shall be construed to give any creditor of the Company or any creditor of any Member or any other person or entity whatsoever, other than the Members and the Company, any legal or equitable right, remedy or claim under or in respect of this Agreement or any covenant, condition or provisions herein contained, and such provisions are and shall be held to be for the sole and exclusive benefit of the Members and the Company.

**9.6      Entire Agreement; Amendments; Severability; General.** This Agreement, including all exhibits and schedules hereto, as amended from time to time in accordance with the terms of this Agreement, contains the entire agreement between the parties relative to the subject matters hereof. This Agreement or the Articles of Organization may only be amended or modified by a writing executed and delivered by Members owning not less than seventy-five percent (75%) of the Membership Interests. If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provisions to other persons or circumstances shall not be affected thereby, and the intent of this Agreement shall be enforced to the greatest extent permitted by law. The designations of Members as used herein shall include singular, plural, masculine, feminine or neuter as required by context.

9

**C1R Distributing, LLC**
**Operating Agreement**

IN WITNESS WHEREOF, the undersigned, being all Members of the Company, have caused this Agreement to be duly adopted by the Company as of the day and year first above written and do hereby assume and agree to be bound by and to perform all of the terms and provisions set forth in this Agreement.

Robert Novinger

2/20/02
Date

Steven Walker

·2/20/02
Date

Jefferson Hitchcock

2/20/02
Date

10

# EXHIBIT "D"

# EXHIBIT "D"



# State of California
## Secretary of State

### STATEMENT OF INFORMATION
(Domestic Stock Corporation)

| S |
|---|

## E-142476

## FILED
In the office of the Secretary of State
of the State of California

## Jun - 7 2005

**FEES (Filing and Disclosure): $25.00.  If amendment, see instructions.**

**IMPORTANT - READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

1. **CORPORATE NAME**  (Please do not alter if name is preprinted.)

C2149060
C1R, INC.

9000 SUNSET BLVD. SUITE 709
WEST HOLLYWOOD, CA 90069

This Space For Filing Use Only

**CALIFORNIA CORPORATE DISCLOSURE ACT** (Corporations Code section 1502.1)

A publicly traded corporation must file with the Secretary of State a Corporate Disclosure Statement (Form SI-PT) annually, within 150 days after the end of its fiscal year.  Please see reverse for additional information regarding publicly traded corporations.

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city.  Items 2 and 3 cannot be P.O. Boxes.)

| 2. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | ZIP CODE |
|---|---|---|
| 9000 SUNSET BLVD. SUITE 709   WEST HOLLYWOOD, CA  90069 | | |

| 3. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 9000 SUNSET BLVD. SUITE 709   WEST HOLLYWOOD, CA 90069 | | | |

**NAMES AND COMPLETE ADDRESSES OF THE FOLLOWING OFFICERS** (The corporation must have these three officers.  A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| 4. CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| ROBERT   NOVINGER | 9000 SUNSET BLVD. SUITE 709   WEST HOLLYWOOD, CA 90069 | | |

| 5. SECRETARY/ | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| STEVN   WALKER | 9000 SUNSET BLVD. SUITE 709   WEST HOLLYWOOD, CA 90069 | | |

| 6. CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| ROBERT   NOVINGER | 9000 SUNSET BLVD. SUITE 709   WEST HOLLYWOOD, CA 90069 | | |

**NAMES AND COMPLETE ADDRESSES OF ALL DIRECTORS, INCLUDING DIRECTORS WHO ARE ALSO OFFICERS** (The corporation must have at least one director.  Attach additional pages, if necessary.)

| 7. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| ROBERT  NOVINGER | 9000 SUNSET BLVD. SUITE 709   WEST HOLLYWOOD, CA 90069 | | |

| 8. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| STEVEN  WALKER | 9000 SUNSET BLVD. SUITE 709   WEST HOLLYWOOD, CA 90069 | | |

| 9. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| | | | |

10. **NUMBER OF VACANCIES ON THE BOARD OF DIRECTIONS, IF ANY:**

**AGENT FOR  SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and Item 12 must be completed with a California address.  If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 12 must be left blank.

11. NAME OF AGENT FOR SERVICE OF PROCESS

PAUL PAPILE

| 12. ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 9000 SUNSET BLVD. SUITE 709   WEST HOLLYWOOD, CA 90069 | | | |

**TYPE OF BUSINESS**

13. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

PRODUCERS

14. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| ROBERT  NOVINGER | | C.E.O | 06/07/2005 |
|---|---|---|---|
| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |

| SI-200 C (REV 03/2005) | APPROVED BY SECRETARY OF STATE |
|---|---|

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS:** SAM S. LESLIE, as Chapter 7 Trustee of the Estate of Jefferson Howard Hitchcock, | **DEFENDANTS:** ROBERT NOVINGER, an individual, C1R DISTRIBUTIONS, LLC, a California limited liability company, C1R, INC., a California corporation, RASCAL VIDEO, LLC, a California limited liability company |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Christian T. Kim<br>DUMAS & KIM, APC.<br>3435 Wilshire Blvd., Ste. 990<br>Los Angeles, CA 90010<br>213/368-5000 Fax: 213/368-5009 | **ATTORNEYS** (If Known)<br>Kit Winter, Esq.<br>Law Office of S. Christopher Winter<br>5455 Wilshire Ave., Ste. 1505<br>Los Angeles, CA 90036<br>323/538-0498 |

| **PARTY** (Check One Box Only) | | **PARTY** (Check One Box Only) | |
|---|---|---|---|
| ☐ Debtor | ☐ U.S. Trustee/Bankruptcy Admin | ☐ Debtor | ☐ U.S. Trustee/Bankruptcy Admin |
| ☐ Creditor | ☐ Other | ☐ Creditor | ☑ Other |
| ☑ Trustee | | ☐ Trustee | |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUES INVOLVED)
**(1) BREACH OF FIDUCIARY DUTY; (2) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; (3) BREACH OF WRITTEN AGREEMENT; (4) CONVERSION; AND (5) TURNOVER AND ACCOUNTING**

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
[ X ] 11-Recovery of money/property - §542 turnover of property
[ ] 12-Recovery of money/property - §547 preference
[ ] 13-Recovery of money/property - §548 fraudulent transfer
[ ] 14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
[ ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
[ ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
[ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
[ ] 51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
[ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[ ] 62-Dischargeability - §523(a)(2), false pretenses,
    false representation, actual fraud
[ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary,
    embezzlement, larceny

    **(continued next column)**

**FRBP 7001(6) - Dischargeability (continued)**
[ ] 61-Dischargeability - §523(a)(5), domestic support
[ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
[ ] 63-Dischargeability - §523(a)(8), student loan
[ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
[ ] 65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
[ ] 71-Injunctive relief - imposition of stay
[ ] 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
[ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
[ ] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
[ ] 01-Determination of removed claim or cause

**Other**
[ ] SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
[ ] 02-Other (e.g. other actions that would have been brought in state
    court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ **According to Proof** |
| Other Relief Sought | |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
| --- | --- |
| NAME OF DEBTOR<br>Jefferson Howard Hitchcock | BANKRUPTCY CASE NO.<br>2:15-bk-16468-RK |

| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Honorable Robert N. Kwan |
| --- | --- | --- |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| --- | --- | --- |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
| --- | --- |
| Christian T. Kim | |
| DATE<br>April 24, 2017 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Christian T. Kim (SBN 231017) |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Christian T Kim<br>Dumas & Assoc<br>3435 Wilshire Blvd Ste 990<br>Los Angeles, CA 90010<br><br>213-368-5000<br><br><br><br><br>_Plaintiff or Attorney for Plaintiff_ | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| In re:<br><br>Jefferson Howard Hitchcock<br><br><br>                                  Debtor(s). | CASE NO.: 2:15-bk-16468-RK<br><br>CHAPTER: 7<br><br>ADVERSARY NUMBER: 2:17-ap-01246-RK |
|---|---|
| Sam S. Leslie<br><br>                                  Plaintiff(s)<br><br>                    Versus<br><br>Robert Novinger<br><br>**(See Attachment A for names of additional defendants)**<br>                                  Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is **05/25/2017.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

|   |   |
|---|---|
| **Date:** | **June 27, 2017** |
| **Time:** | **01:30 PM** |
| **Hearing Judge:** | **Robert N. Kwan** |
| **Location:** | **255 E Temple St., Crtrm 1675, Los Angeles, CA 90012** |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: <u>April 25, 2017</u>

By: _____<u>"s/" Shafari Tatum</u>_____

Deputy Clerk



---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                    Page 2                    **F 7004–1.SUMMONS.ADV.PROC**

# ATTACHMENT A
## Names of plaintiffs and defendants

| Plaintiff(s): | Defendant(s): |
|---|---|
| Sam S. Leslie | Robert Novinger<br>C1R DISTRIBUTIONS, LLC, a California limited liability company<br>C1R, INC., a California corporation<br>RASCAL VIDEO, LLC, a California limited liability company |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**ATTACHMENT A**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:


A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004−1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005−2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:



☐  Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>:** On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.



☐  Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u> (<u>state method for each person or entity served</u>):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.



☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____    _____    _____
*Date*                              *Printed Name*                                        *Signature*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*

**F 7004−1.SUMMONS.ADV.PROC**

# FREE LEGAL HELP

A creditor has sued you in bankruptcy court. You were served with a Summons and Complaint, and you must now file an Answer. If you do not file an Answer on time, the court may enter a default judgment against you. This means that your debt may not be discharged and you will be responsible for paying it back.

## IF YOU CAN NOT AFFORD AN ATTORNEY, FREE LEGAL HELP MAY BE AVAILABLE.

For more information, call:

### Public Counsel's

### Debtor Assistance Project Hotline

### (213) 385-2977, ext. 704



35TH ANNIVERSARY

THE PUBLIC INTEREST LAW OFFICE OF THE LOS ANGELES COUNTY AND BEVERLY HILLS BAR ASSOCIATIONS

# AYUDA LEGAL GRATUITA

Su acreedor le ha demandado en la corte de bancarrota. Usted recibió la demanda, llamada "Summons" y "Complaint." Usted debe archivar una respuesta a la demanda en la corte. Si no archiva la respuesta a tiempo, la corte puede decidir en su contra. Si eso sucede, la deuda no se descargará en su caso de bancarrota y Usted será responsable por pagar al acreedor.

## SI LE FALTAN RECURSOS PARA CONTRATAR A UN ABOGADO, LLAME A LA LINEA DE AYUDA LEGAL GRATUITA.

Para mas información, llame al:

**Proyecto de Ayuda al Deudor
de
Public Counsel**

**(213) 385-2977, ext. 704**



35TH ANNIVERSARY
THE PUBLIC INTEREST LAW OFFICE OF THE LOS ANGELES COUNTY AND BEVERLY HILLS BAR ASSOCIATIONS



FILED

APR 25 2017

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

ENTERED

APR 25 2017

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

1

2

3

4

5

6

7

8            **UNITED STATES BANKRUPTCY COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10               **LOS ANGELES DIVISION**

11   In re                          Case No. 2:15-bk-16468-RK

12   JEFFERSON HOWARD HITCHCOCK      Chapter 7

13            Debtor.               Adv. No. 2:17-ap-01246-RK

14   _____

15   SAM S. LESLIE                  **ORDER SETTING INITIAL STATUS**
                                    **CONFERENCE IN ADVERSARY**
16            Plaintiff(s),         **PROCEEDING**

17   vs.

18   ROBERT NOVINGER, C1R
     DISTRIBUTIONS, LLC, a California
19   limited liability company,  C1R, INC, a
     California Corporation, RASCAL
20   VIDEO, LLC, a California limited
     liability company
21
              Defendant(s).
22   _____

23   **TO THE PARTIES TO THE ABOVE-ENTITLED ADVERSARY PROCEEDING,**

24   **WHETHER REPRESENTED BY COUNSEL OR SELF-REPRESENTED:**

25        This adversary proceeding is assigned to Judge Robert Kwan, United States

26   Bankruptcy Judge.  This matter having been assigned to Judge Kwan,

27        IT IS HEREBY ORDERED as follows:

28

1. A status conference in the adversary proceeding is hereby scheduled before Judge Kwan for Tuesday June 27, 2017 at 1:30 p.m., in Courtroom 1675, Roybal Federal Building, 255 East Temple Street, Los Angeles, California.  All parties to the adversary proceeding are ordered to appear at the status conference either by counsel, or for themselves if they are self-represented.  This order to appear applies to all plaintiffs, all parties who have filed counterclaims and cross-claims, all defendants served with a complaint, counterclaim or cross-claim, and all parties to a removed action (the "Parties").[1]

2. **As a party to this adversary proceeding, your appearance at the status conference is required by this order and Local Bankruptcy Rule 7016-1.  The failure of a Party to appear at a status conference or a pre-trial conference without excuse may be considered an abandonment or failure to prosecute or defend diligently, and the court may impose sanctions against the culpable Party, including monetary sanctions or terminating sanctions, such as dismissal of the adversary proceeding or entry of default judgment may be entered against the defaulting Party.  Rules 7016-1 and 9011-3 of the Local Bankruptcy Rules.**

3. The court expects that all parties have read and are familiar with the applicable court rules, including the Local Bankruptcy Rules of this court, which may be viewed online on the court's website at http://www.cacb.uscourts.gov/local-rules.

4. As required by the applicable rules of court, including Rule 7004 of the Federal Rules of Bankruptcy Procedure, Plaintiff, or Counterclaimant, or Cross-Claimant, or Removing Party must promptly serve copies of the following documents on all other parties:

---

[1] All parties are required to be in the courtroom promptly at the time of hearing. This means parties should set aside at least 15 minutes to account for possible problems with traffic, parking, getting through the courthouse security checkpoint and taking the building elevator, etc. The address and parking information for the court can be found on the court's website at http://www.cacb.uscourts.gov/court-locations/los-angeles

1       a. This order;

2       b. Summons and complaint, or counterclaim, or cross-claim, or notice of

3           removal of action, as applicable;

4       c. Notice of required compliance with Local Bankruptcy Rule 7026-1.

5   Summonses to be served with pleadings must be served within 7 days of issuance

6   by the Clerk of Court as required by Rule 7004(e) of the Federal Rules of

7   Bankruptcy Procedure.

8  5. Plaintiff, or Counterclaimant, or Cross-Claimant, or Removing Party must promptly

9   file a proof of service indicating that all documents in paragraph 4 of this order

10   were served on all other Parties.  Failure to serve copies of these documents in a

11   timely manner and/or failure to file a proof of service of these documents in a

12   timely manner may result in the court imposing sanctions against the culpable

13   Party for failure to prosecute.

14  6. Pursuant to Local Bankruptcy Rule 7016-1(a)(2), all Parties must file and serve a

15   Joint Status Report at least fourteen days before the status conference  (see

16   paragraph 1 of this order).  For the Joint Status Report, the Parties must use the

17   Local Form 7016-1.STATUS.REPORT, which can be found on the court's website

18   at http://www.cacb.uscourts.gov/forms/local_bankruptcy_rules_forms or at the

19   court's intake office on the 9th Floor of the Roybal Federal Building, 255 East

20   Temple Street, Los Angeles, California.

21  7. If any Party fails to cooperate in the preparation of a Joint Status Report, the other

22   Party or Parties must file and serve a Unilateral Status Report at least ten days

23   before the date scheduled for the status conference hearing.  Any Unilateral

24   Status Report must include a declaration under penalty of perjury made by the

25   Party filing the Unilateral Status Report, or the Party's attorney, explaining the

26   attempts made to obtain the cooperation of the Party that failed to cooperate in

27   preparing a Joint Status Report.

28

8. **As a party to this adversary proceeding, you are required to prepare and file a Joint Status Report or a Unilateral Status Report by this order and Local Bankruptcy Rule 7016-1. The failure of a Party to cooperate in the preparation and filing of a Joint Status Report or a Unilateral Status Report without excuse may also be considered an abandonment or failure to prosecute or defend diligently, and the court may impose sanctions against the culpable Party, including monetary sanctions or terminating sanctions, such as dismissal of the adversary proceeding or entry of default judgment may be entered against the defaulting Party. Rules 7016-1 and 9011-3 of the Local Bankruptcy Rules.**

9. At the status conference, the court expects that the parties will be prepared to discuss the status of service of the pleadings (including the complaint, counterclaims and cross-claims and pleadings in removed actions), the status of responsive pleadings  (including answers and motions to attack the pleadings, such as motions to dismiss, to strike or for more definite statement, to remand or transfer venue), the status of served but non-appearing parties (including whether requests for entry of default or motions for default judgment are pending), and the matters set forth in Local Bankruptcy Rule 7016-1 (including proposed schedules for discovery completion, law and motion matters, pretrial conference and trial, whether the parties have conducted an early meeting under Local Bankruptcy Rule 7026-1, whether the parties are interested in and have discussed settlement, and mediation or alternative dispute resolution), and any other issues affecting the status or management of the adversary proceeding.

IT IS SO ORDERED.

### 

APR 25 2017

**U.S. Bankruptcy Judge**

| In re: JEFFERSON HOWARD HITCHCOCK<br>Leslie v. Novinger | CHAPTER: 7 |
|---|---|
| | CASE NUMBER: 2:15-bk-16468-RK |
| Debtor(s). | ADV. CASE NUMBER: 2:17-ap-01246-RK |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 3435 Wilshire Blvd., Ste. 990, Los Angeles, CA 90010.

A true and correct copy of the foregoing document entitled (*specify*):  **Complaint for: (1) Breach of Fiduciary Duty; (2) Aiding and Abetting Breach of Fiduciary Duty; (3) Breach of Written Agreement; (4) Conversion; and (5) Turnover and Accounting; Adversary Proceeding Sheet; Summons and Notice of Status Conference in Adversary Proceeding; Free legal form; Order Setting initial Status Conference in Adversary Proceeding** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 26, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Christian T Kim    ckim@dumas-law.com, ckim@ecf.inforuptcy.com
Sam S Leslie (TR) sleslie@trusteeleslie.com, sleslie@ecf.epiqsystems.com; trustee@trusteeleslie.com
United States Trustee (LA)   ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) **April 26, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Jefferson Howard Hitchcock
954 North Croft Avenue, #202
West Hollywood, CA 90069

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **April 26, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

United States Bankruptcy Court
Hon. Robert N. Kwan
255 E. Temple St., Crt. Room 1682
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _April 26, 2017_ | Danielle M. Landeros | _/s/ Danielle M. Landeros_ |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                            **F 9013-3.1.PROOF.SERVICE**

| In re:  JEFFERSON HOWARD HITCHCOCK | | CHAPTER:  7 |
| Leslie v. Novinger | | CASE NUMBER: 2:15-bk-16468-RK |
| | Debtor(s). | ADV. CASE NUMBER: 2:17-ap-01246-RK |

C1R DISTRIBUTIONS, LLC, a California limited liability company
Agent for Service of Process Robert Novinger
8721 Santa Monica Blvd., #525
West Hollywood, CA 90069

C1R, INC., a California corporation
Agent for Service of Process Paul Papile
9000 Sunset Blvd., Ste. 706
West Hollywood, CA 90069

Robert Novinger
900 N. Citrus Avenue
Los Angeles, CA 90038-2402

RASCAL VIDEO, LLC, a California limited liability company
Agent for Service of Process S. Christopher Winter
555 W. St., 35th Floor
Los Angeles, CA 90013

Kit Winter, Esq.
Law office of S. Christopher Winter
5455 Wilshire Ave., Ste. 1505
Los Angeles, CA 90036

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**