1  S. Christopher Winter (CSB #190474)
   kw@winterlaw.us
2  **LAW OFFICE OF S. CHRISTOPHER WINTER**
   5455 Wilshire Blvd, Suite 1505
3  Los Angeles, California 90036
   Telephone:  (323) 538-0498
4  Facsimile:   (310) 388-5803

5  Attorneys for Defendants
   ROBERT NOVINGER, C1R, INC.,
6  C1R DISTRIBUTION, LLC and
   RASCAL VIDEO, LLC

7



8           **UNITED STATES BANKRUPTCY COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10               **LOS ANGELES DIVISION**

11

12  In re                          CHAPTER 7        **FILED BY FAX**

13  JEFFERSON HOWARD HITCHCOCK,     Case No. 2:15-bk-16468-RK

14           Debtor.               ADV. No. 2:17-ap-01246-RK

15  _____    **DEFENDANTS' NOTICE OF
                                   MOTION AND MOTION TO
16  SAM S. LESLIE, as Chapter 7 Trustee of   DISMISS COMPLAINT PURSUANT
    the Estate of Jefferson Howard   TO RULE 12(b)(6) OF THE
17  Hitchcock,                     FEDERAL RULES OF CIVIL
                                   PROCEDURE; MEMORANDUM OF
18           Plaintiff,            POINTS AND AUTHORITIES IN
                                   SUPPORT THEREOF**
19  vs.
                                   **Hearing:**
20  ROBERT NOVINGER; an individual;
    C1R DISTRIBUTION, LLC, a        Date:      July 11, 2017
21  California limited liability company;   Time:      3:30 p.m.
    C1R, Inc., a California corporation;   Location:  255 East Temple St.
22  RASCAL VIDEO, LLC, a California             Courtroom 1675
    limited liability company,                 Los Angeles, CA 90012
23
                                   Judge:     Hon. Robert N. Kwan
24           Defendants.

25

26

27

28

LAW OFFICE OF S. CHRISTOPHER WINTER,
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

**TO THE HONORABLE ROBERT N. KWAN, U.S. BANKRUPTCY JUDGE, THE PLAINTIFF, THE TRUSTEE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL OTHER INTERESTED PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 11, 2017, at 3:30 p.m. before the Honorable Judge Robert N. Kwan in Courtroom 1675 of the United States Bankruptcy Court located at 255 East Temple Street, Los Angeles, California, Robert Novinger, C1R Distribution, LLC, C1R, Inc., and Rascal Video, LLC, Defendants in the above-referenced adversary proceeding, will and hereby do move for entry of an order dismissing the Plaintiff's Complaint with prejudice and without leave to amend.

Defendants bring this Motion, by and through their counsel of record on the grounds that each claim asserted in the Trustee's Complaint fails to state a claim upon which relief may be granted. Specifically, the Motion is made on the following grounds:

1.      The claims asserted in the Complaint belong to Hot Box Grafix, Inc., a California corporation of which Debtor is the sole shareholder. Hot Box Grafix, Inc. has had its corporate status suspended by the Franchise Tax Board and as such is unable to prosecute or defend claims.

2.      Each claim asserted in the Complaint is based on an allegation that Hot Box is entitled to property of C1R Distribution, LLC to which it is not, in fact, entitled under the operating agreement or applicable law.

This Motion is brought pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) made applicable by Federal Rules of Bankruptcy Procedure, Rule 7012; Rule 9013-1 of the Local Bankruptcy Rules, and other applicable statutory and case law as the facts of the matter may present. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto; the Declaration of Paul Papile and Request for Judicial Notice filed concurrently herewith; all pleadings, documents and records on file with this Court, upon oral

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

1  argument made at the time of hearing, and as such other matters as the Court may

2  properly consider at or before the hearing.

3      PLEASE TAKE FURTHER NOTICE that pursuant to Local Bankruptcy

4  Rules, Rule 9013-1(f), any interested party wishing to oppose or respond to this

5  Motion must file and serve the response on the moving party upon the attorney listed

6  above and the Office of the Unites States Trustee not later than 14 days before the

7  designated date for hearing.  Failure to file and serve a timely written opposition may

8  be deemed to constitute consent to the relief requested in the Motion.

9

10  Dated:  May 25, 2017                    Respectfully submitted,

11                                          **LAW OFFICE OF S. CHRISTOPHER WINTER**

12

13                                          By: _____

14                                              S. Christopher Winter
                                                Attorney for Defendants
15                                              C1R DISTRIBUTION, LLC,
                                                RASCAL VIDEO, LLC, C1R, INC.,
16                                              ROBERT NOVINGER

17

18

19

20

21

22

23

24

25

26

27

28

*NOTICE OF MOTION AND MOTION TO DISMISS*

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

# TABLE OF CONTENTS

INTRODUCTION AND FACTUAL BACKGROUND.................................................8

LEGAL STANDARD...............................................................................................10

ARGUMENT .........................................................................................................12

    A.    The Complaint must be dismissed because Hot Box Grafix, Inc. is a suspended corporation that lacks the capacity to sue, and the Trustee cannot pursue claims on its behalf. ............................12

    B.    The Complaint fails to state facts sufficient to constitute a claim for Breach of Fiduciary Duty .................................................15

    C.    The Complaint fails to state facts sufficient to constitute a claim for Aiding and Abetting Breach of Fiduciary Duty .................19

    D.    The Complaint fails to state facts sufficient to constitute a claim for Breach of Written Agreement .......................................19

    E.    The Complaint fails to state facts sufficient to constitute a claim for Conversion.........................................................21

    F.    The Complaint fails to state facts sufficient to constitute a claim for Turnover and Accounting.................................................24

CONCLUSION.......................................................................................................26

*NOTICE OF MOTION AND MOTION TO DISMISS*

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

# TABLE OF AUTHORITIES

**Cases**

*AIU Ins. Co. v. Superior Court,*
    51 Cal. 3d 807 (1990) .................................................................. 20

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009) ............................................................ 10

*Avikian v. WTC Financial Corp.,*
    98 Cal.App.4th 1108 (2002) ...................................................... 24

*Barapind v. Reno,*
    72 F.Supp.2d 1132 (E.D. Cal. 1999) ......................................... 11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 554, 555 (2007) ............................................................ 10

*Berg & Berg Enterprises, LLC v. Boyle,*
    178 Cal.App.4th 1020 (2009) .................................................... 18

*Branch v. Tunnell,*
    14 F.3d 449, 454 (9th Cir. 1994) .............................................. 11

*Cal-Western Business Services, Inc. v. Corning Capital Group,*
    221 Cal.App.4th 304 (2013) ...................................................... 14

*Cty. Of Santa Clara v. Escobar,*
    244 Cal.App.4th 555 (2016) ...................................................... 13

*Fiol v. Doellstedt,*
    50 Cal.App.4th 1318 (1996) ...................................................... 19

*Fischer v. Machado,*
    50 Cal.App.4th 1069 (1996) ...................................................... 21

*Gough v. Titus (In re Christian & Porter Aluminum Co.),*
    584 F.2d 326 (9th Cir.1978) ...................................................... 15

*In re Stephens,*
    77 Cal. 357 (1888) ...................................................................... 15

*International Audiotext Network v. Am. Tel. & Tel. Co.,*
    62 F.3d 69 (2d Cir.1995) ............................................................ 11

*Johnson v. Riverside Healthcare Sys.,*
    534 F.3d 1116 (9th Cir. 2008) .................................................... 10

*Jones v. H. F. Ahmanson & Co.,*
    1 Cal. 3d 93 (1969) .................................................................... 24

*Moore v. Regents of University of California,*
    51 Cal.3d 120 (1990) .................................................................. 21

*Outdoor Cent., Inc. v. GreatLodge.com, Inc.,*
    643 F.3d 1115 (8th Cir. 2011) .................................................... 11

5

*PacLink Communications Internat., Inc. v. Superior Court,*
    90 Cal.App.4th 958 (2001) ............................................................. 17, 23, 24

*Ritter & Ritter, Inc. Pension and Profit Plan v. Churchill Condominium Assn.,*
    166 Cal.App.4th 103 (2008) ............................................................. 18

*Roe v. Unocal Corp.,*
    70 F.Supp.2d 1073 (C.D. Cal. 1999) ............................................. 11

*Rutman Wine Co. v. E.&J. Gallo Winery,*
    829 F.2d 729 (9th Cir. 1987) ......................................................... 10

*Saunders v. Superior Court,*
    27 Cal.App.4th 832 (1994) ............................................................. 19

*Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.,*
    245 F.2d 67 (9th Cir. 1956) ........................................................... 11

*Skilstaf, Inc. v. CVS Caremark Corp.,*
    669 F.3d 1005 (9th Cir. 2012) ....................................................... 20

*Smith v. Arthur Andersen LLP,*
    421 F.3d 989 (9th Cir. 2005) ......................................................... 13

*Thorner v. Selective Cam Transmission Co.,*
    180 Cal.App.2d 89 (1960) ............................................................. 14

*U.S. v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) ......................................................... 11

*United Medical Management Ltd. v. Gatto,*
    49 Cal.App.4th 1732 (1996) ..................................................... 13, 14

*United States v. Whiting Pools, Inc.,*
    462 U.S. 198 (1983) ....................................................................... 13

*V & P Trading Co. v. United Charter, LLC,*
    212 Cal.App.4th 126 (2012) ........................................................... 13

*Vu v. California Commerce Club,* Inc.,
    58 Cal.App.4th 229 (1997) ............................................................. 21

**Other Authorities**

11 U.S.C. § 541 (a)(1) ........................................................................... 13

11 U.S.C. § 704(a)(1) ........................................................................... 13

5 Witkin, *Summary of Cal. Law* (10th ed. 2005) ............................... 21

Rest.2d Torts, § 876 ............................................................................. 19

Rev. & Tax. Code, § 23305 ................................................................... 13

Rev. & Tax. Code, §§ 23301 ................................................................. 13

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

*NOTICE OF MOTION AND MOTION TO DISMISS*

Rev. & Tax. Code, §§ 23301.5 ......................................................................... 13

*Wright & Miller,*
      *Federal Practice and Procedure* .................................................................. 11

**Rules**

Cal. Civ. Code § 1636................................................................................... 20

Cal. Civ. Code § 1638................................................................................... 20

Cal. Civ. Code § 1639................................................................................... 20

Fed. R. Civ. P. 12(b)(6) ............................................................................... 10

Fed. R. Civ. P. 8(a)(2)................................................................................... 10

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

*NOTICE OF MOTION AND MOTION TO DISMISS*

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION AND FACTUAL BACKGROUND

Prior to filing bankruptcy, Jefferson Hitchcock ("Debtor") was the sole shareholder of Hot Box Grafix, Inc. ("Hot Box"), a California corporation. (Complaint, ¶ 11). Hot Box, in turn, was a member of defendant C1R Distribution, LLC (incorrectly sued as "C1R Distributions") ("C1R Distribution" or the "LLC"). (*Id.*). Since approximately 2014, C1R Distribution's main asset has been two accounts receivable from defendant Rascal Video, LLC in the total amount of $1,220,311.90 as of December 31, 2014. (*Id.* at ¶ 17).

Hot Box and the other members of C1R Distribution are parties to an operating agreement (the "Operating Agreement"). (*Id.* at ¶ 37). The Operating Agreement provides, among other things, that:

- Legal title to all LLC assets shall be held in the name of the LLC, and members have no right, title or interest in or to any LLC property nor any right to partition LLC property (§1.2);

- No member shall have the right to withdraw any part of his capital contribution or receive any return on any portion of his capital contribution (§6.7);

- No member shall have priority over any other member, either as to the return of capital contribution or as to net income, net losses, or distributions (§6.7);

- Members shall distribute Distributable Cash at such time and in such amounts as may be determined in the sole discretion of the Members. (§7.1);

- "Distributable Cash" means, with respect to the Company for a period of time, all funds of the Company which, at the discretion of the Members, are available for distribution to Members after provision has been made for payment of all operating expenses and of all outstanding and unpaid

8

current obligations of the Company as of such time, and for such

reserves as the members deem appropriate or necessary. (§7.1);

- Except as provided by the Operating Agreement, no Member shall at any time retire or withdraw from the Company or withdraw any amount out of his capital account. (§8.1).

Jefferson Hitchcock filed a voluntary Chapter 7 petition on April 24, 2015. (*Id.* at ¶ 18)  The Plaintiff, Sam Leslie, is the Chapter 7 bankruptcy trustee for the estate of the Debtor.   Hot Box is currently suspended by the Franchise Tax Board.

On April 25, 2017, the Trustee filed an adversary complaint against C1R, Inc., majority owner and manager of C1R Distribution, Robert Novinger, one of the shareholders of C1R, Inc., and Rascal Video, LLC, a third party of which Novinger is a manager (the "Complaint"). Although the Complaint asserts five causes of action, each claim is based on the same set of three core factual allegations:

1. C1R Distribution did not distribute revenue from the Rascal loans to Hot Box,

2. C1R Distribution did not pay Hot Box its capital account,

3. C1R Distribution did not pay Hot Box twenty percent of the outstanding balance of the loans due from Rascal.

Because each of the Trustee's claims is based on these same facts, they all fail for more or less the same reason: The acts that the Trustee demands would constitute a breach of the Operating Agreement for which the managers who performed them would be personally liable. Hot Box is not entitled to its capital account, or to amounts owed to C1R Distribution, or to receive distributions in priority to other members. By entering into the Operating Agreement, Hot Box agreed and consented to these terms.

In addition, even if the Complaint did state viable claims, those claims belong to Hot Box, not the Debtor, and cannot be asserted while Hot Box's corporate status is suspended.

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

*NOTICE OF MOTION AND MOTION TO DISMISS*

1    The Complaint should be dismissed in its entirety, with prejudice.

2                               **LEGAL STANDARD**

3        Rule 12(b)(6) authorizes the court, upon motion of the defendant, to dismiss a

4    complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P.

5    12(b)(6): "The purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to

6    challenge the legal sufficiency of complaints without subjecting themselves to

7    discovery." *Rutman Wine Co. v. E.&J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir.

8    1987). Rule 12(b)(6) is applicable to adversary proceedings by FRBP 7012(b).

9        Under Rule 8(a), a complaint must contain "a short and plain statement of the

10   claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)

11   is applicable to adversary proceedings by FRBP 7008(a). "[T]he pleading standard

12   Rule 8 announces does not require 'detailed factual allegations,' but it demands more

13   than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v.*

14   *Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S.

15   554, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as

16   true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678

17   (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the

18   plaintiff pleads factual content that allows the court to draw the reasonable inference

19   that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678

20   (quoting *Twombly,* 550 U.S. at 556). "[A] complaint [that] pleads facts that are

21   'merely consistent with' a defendant's liability . . . 'stops short of the line between

22   possibility and plausibility of entitlement to relief.'" *Iqbal,* 556 U.S. at 678 (quoting

23   *Twombly,* 550 U.S. at 557).

24       The trial court need not accept as true conclusory allegations in a complaint, or

25   legal characterizations cast in the form of factual allegations. *Twombly,* 550 U.S. at

26   555-56. A Rule 12(b)(6) dismissal may be based on either the lack of a cognizable

27   legal theory, or the absence of sufficient facts alleged under a cognizable legal theory.

28   *Johnson v. Riverside Healthcare Sys.,* 534 F.3d 1116, 1121 (9th Cir. 2008). A claim

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

1   cannot be plausible when it has no legal basis.

2       "In deciding Rule 12(b)(6) motions, courts are not strictly limited to the four

3   corners of complaints." *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115,

4   1120 (8th Cir. 2011). Courts may consider "matters incorporated by reference or

5   integral to the claim, items subject to judicial notice, matters of public record, orders,

6   items appearing in the record of the case, and exhibits attached to the complaint

7   whose authenticity is unquestioned; these items may be considered by the [court]

8   without converting the motion into one for summary judgment." *Wright & Miller,*

9   *Federal Practice and Procedure:* Civil 3d § 1357, at 376 (2004). See, e.g., *U.S. v.*

10  *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain

11  materials — documents attached to the complaint, documents incorporated by

12  reference into the complaint, or matters of judicial notice — without converting the

13  motion to dismiss into a motion for summary judgment"); *Sears, Roebuck & Co. v.*

14  *Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956) ("[J]udicial notice may

15  be taken of a fact to show that a complaint does not state a cause of action."); *Branch*

16  *v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[W]e hold that documents whose

17  contents are alleged in the complaint and whose authenticity no party questions, but

18  which are not physically attached to the pleading, may be considered in ruling on a

19  Rule 12(b)(6) motion to dismiss."), cert. denied, 512 U.S. 1219 (1994); *Barapind v.*

20  *Reno*, 72 F.Supp.2d 1132, 1141 (E.D. Cal. 1999) ("Matters of public record may be

21  considered, including pleadings, orders, and other papers filed with the court or

22  records of administrative bodies."); *Roe v. Unocal Corp.,* 70 F.Supp.2d 1073, 1075

23  (C.D. Cal. 1999) ("[E]ven if a document is neither submitted with the complaint nor

24  explicitly referred to in the complaint, the . . . court may consider the document in

25  ruling on a motion to dismiss so long as the complaint necessarily relies on the

26  document and the document's authenticity is not contested."); *International Audiotext*

27  *Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (considering an

28  agreement that was not specifically incorporated into the complaint because the

1   complaint "relies heavily upon its terms and effect" such that the agreement is

2   "integral" to the complaint).

3        Here, the Operating Agreement is attached as Exhibit C to the Complaint.  C1R

4   Distribution's tax returns for 2013, 2014 and 2015 are not attached to the Complaint,

5   but are explicitly referred to and relied on.  The Court may therefore consider the

6   Operating Agreement and the tax returns without converting this motion to dismiss

7   into a motion for summary judgment.

8                                    **ARGUMENT**

9   **A.    The Complaint must be dismissed because Hot Box Grafix, Inc. is a
10          suspended corporation that lacks the capacity to sue, and the
11          Trustee cannot pursue claims on its behalf.**

12       Hot Box, not the Debtor, is a member of defendant C1R Distribution.

13  (Complaint at ¶ 11).  The Debtor is the sole owner of Hot Box.  *(Id.)*.  Hot Box, not

14  the Debtor, is a party to the C1R Distribution Operating Agreement.  *(Id. ¶ 11)*.   The

15  factual allegations upon which the claims in the Complaint are based all relate to

16  duties allegedly owed to Hot Box, not the Debtor: (i) "denying Hot Box

17  distributions;" *(see id. at ¶¶ 16, 17, 19, 20, 26, 31, 38, 42, 49)*; (ii) failing to pay Hot

18  Box its capital *account (see id. at 21, 26, 31, 38, 42, 49, 52)*; and (iii) failing to pay to

19  Hot Box twenty percent of the outstanding balance of loans due from defendant

20  Rascal *(see id. at ¶¶ 26, 31, 38, 42)*.  Other than various conclusory allegations of

21  malfeasance (e.g., "engaging in conduct that constitutes gross negligence, reckless

22  behavior, intentional misconduct, and knowing violation of the law") *(id. at ¶ 26)*,

23  these constitute the entirety of the operative factual allegations underlying the

24  complaint.  There is no wrongdoing specifically alleged in the Complaint other than

25  denying Hot Box distributions, failing to pay Hot Box its capital account, and failing

26  to pay Hot Box twenty percent of the outstanding balance of loans due from Rascal.

27       Under the Bankruptcy Code, the trustee stands in the shoes of the debtor and

28  has standing to bring any suit that the debtor could have instituted had she not filed

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

for bankruptcy. *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005),
citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9 (1983).  The
trustee is the representative of the bankruptcy estate and has the right to "collect and
reduce to money the property of the estate for which such trustee serves." *See* 11
U.S.C. § 704(a)(1). The "property of the estate" includes "all legal and equitable
interests of the debtor in property as of the commencement of the case," 11 U.S.C. §
541 (a)(1), including the debtor's causes of action.

The Trustee thus stands in the shoes of the Debtor, Jefferson Hitchcock, and
can bring any claims that the Debtor could have brought.  The Trustee does *not* stand
in the shoes of Hot Box itself, but in those of its sole shareholder, the Debtor.  This
distinction is significant, because Hot Box does not have the capacity to bring or
defend any litigation, having been suspended by the Franchise Tax Board for non-
payment of taxes. *(See Request for Judicial Notice ("RJN") filed concurrently*
herewith).

A domestic corporation whose powers have been suspended because it failed to
pay taxes or file tax returns lacks legal capacity to sue during its suspension.  (Rev. &
Tax. Code, §§ 23301, 23301.5; V & P, supra, 212 Cal.App.4th at p. 132.) In order to
restore its corporate status and, consequently, its ability to prosecute claims, the
suspended corporation must pay all taxes, penalties, and other amounts owed, file an
application for relief, and obtain a certificate of revivor from the Franchise Tax
Board. (Rev. & Tax. Code, § 23305.)

The assertion that a plaintiff lacks capacity to sue is a "plea in abatement,"
which challenges the "place, mode, or time of asserting" a claim as opposed to its
merits. (*V & P Trading Co., Inc. v. United Charter, LLC* (2012) 212 Cal.App.4th
126, 133 (V & P), citations omitted.)  A plea in abatement ordinarily results only in a
stay of the action until the basis for abatement is removed. (See *Cty. of Santa Clara
v. Escobar*, 244 Cal.App.4th 555 (2016) (*Santa Clara*); *United Medical Management
Ltd. v. Gatto*,  49 Cal.App.4th 1732, 1740 (1996) (*United Medical*).) However, a

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

1  court is entitled to dismiss the action without prejudice if the plaintiff is unable to

2  remedy the defect. (*United Medical*, supra, 49 Cal.App.4th at p. 1740.)

3     When a plaintiff acquires a claim from a corporation that itself lacked capacity

4  to sue under section 2203, the plaintiff effectively takes upon itself that same lack of

5  capacity.  (See, e.g., *Cal-Western Business Services, Inc. v. Corning Capital Group*,

6  221 Cal.App.4th 304, 311 (2013) (*Cal-Western*) [when a plaintiff is assigned a cause

7  of action, "[t]he assignee 'stands in the shoes' of the assignor, taking his rights and

8  remedies, subject to any defenses which the obligor has against the assignor prior to

9  notice of the assignment" (italics omitted)]; see also *Thorner v. Selective Cam*

10 *Transmission Co.*  180 Cal.App.2d 89, 93 (1960) (*Thorner*).)

11     In Cal-Western, a corporation whose powers were suspended for failure to pay

12 taxes assigned its right to enforce a judgment to the plaintiff, who filed suit on the

13 judgment four years later. (*Cal-Western*, *supra*, 221 Cal.App.4th at 306.) The

14 reviewing court affirmed the trial court's dismissal of the case on the ground that the

15 plaintiff that inherited the suspended corporation's lack of capacity had no intention

16 of paying the assignor's taxes in order to revive its corporate status. (*Id.*  at 312-313.)

17 Additionally, in *Thorner*, the court explained that where a company that lacks

18 capacity to sue transfers its legal claims to another, allowing the latter to prosecute

19 the transferred claims would "so obviously frustrate the purpose of the statute

20 [barring suit by the original claim holder] that we are unwilling to place such a

21 narrowly technical construction upon it." (*Thorner*, *supra,* 180 Cal.App.2d at 93.)

22     The Trustee is in the same position as the plaintiff in Cal-Western. The claims

23 that he is attempting to assert belong to a suspended corporation. In the context of the

24 Debtor's personal bankruptcy, it is difficult to conceive that the Trustee would

25 voluntarily pay the back taxes of a suspended corporation for which the Debtor is

26 presumably not personally liable. Unless the Trustee intends to do so, however, the

27 claims in the complaint cannot be asserted.  Indeed, to advance such claims exposes

28 the Trustee and his counsel to potential imprisonment and disbarment.  Revenue and

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

Taxation Code §19719 states that any person who attempts to exercise the powers, rights and privileges of a suspended corporation (which would include prosecuting or defending claims) may be punished "by a fine of not less than $250 and not exceeding $1,000, or by imprisonment not exceeding one year." In 1998, §19719 was amended to exclude counsel "retained by an insurer on behalf of a suspended corporation." This exclusion, however, was not extended to counsel retained directly by the suspended corporation, or an entity, other than an insurer, acting on its behalf. Consequently, an attorney that represents a suspended corporation in a litigated matter, but was not retained by an insurance company on behalf of the suspended corporation, is in violation of Section 19719. An attorney, other than one retained by an insurance company, who knowingly advances the legal interests of a suspended corporation, potentially puts his or her license in jeopardy; "[i]t has always been considered a sufficient cause for disbarment for an attorney and counselor ... to encourage the commencement of proceedings which he knows, or has reason to know, are illegal or unjust." *In re Stephens*, 77 Cal. 357, 19 P. 646, 647 (1888).

Because Hot Box could not assert the claims in the Bankruptcy on its own behalf, the Debtor (in his capacity as sole shareholder of Hot Box) could not have asserted them. Because the Debtor could not have asserted them, the Trustee cannot assert them. See *Gough v. Titus (In re Christian & Porter Aluminum Co.)*, 584 F.2d 326, 331 (9th Cir.1978) (incapacity to sue or be sued of suspended corporations extends to bankruptcy proceedings). The Complaint should therefore be dismissed for failure to state a claim under Rule 12(b)(6).

**B.    The Complaint fails to state facts sufficient to constitute a claim for Breach of Fiduciary Duty**

Plaintiff alleges that "defendants C1R, Inc. and Robert Novinger breached their fiduciary duties to Hot Box, the Debtor and his Estate by engaging in conduct that constitutes gross negligence, reckless behavior, intentional misconduct, and knowing violation of the law, including, without limitation, improperly (1) denying Hot Box

distributions from Rascal's payments to C1R Distribution totaling $29,918.52

prepetition, and a minimum sum of $5,775.27 postpetition; (2) failing to pay any

portion of Hot Box's capital account to Hot Box or the Debtor, which, as of

December 31, 2015, totaled $157,283; 3) failing to repay any part of the Loans due to

Hot Box or the Debtor in the amount of $242,178.88; and (4) engaging in actions

solely meant to benefit themselves as the majority and controlling owners of both

C1R Distribution and Rascal."

    Notably, except for the conclusory, "the-defendant-unlawfully-harmed-me

accusations," these are the *exact same* allegations that Plaintiff alleges constitute a

breach of the operating agreement: "Defendants C1R, Inc. and/or Robert Novinger

breached the Operating Agreement by failing to pay Hot Box, prepetition, and now

the Debtor's estate, postpetition, what Hot Box and Debtor were entitled to be paid

for Rascal repayments on the Loans and by failing to pay any portion of Hot Box's

capital account to Hot Box or the Debtor, which as of December 31, 2015 totaled

$157,283 and failing to pay any part of the Loans due to Hot Box or the Debtor in the

amount of $242,178.88." (Complaint, ¶ 38).

    The conduct alleged, however, does not constitute either a breach of fiduciary

duty, nor a breach of the Operating Agreement. To the contrary, the Operating

Agreement is explicit that Hot Box does not have any direct entitlement to the

amounts received from Rascal for repayments on the loan, does not have any right to

demand return of all or any part of its capital account, and does not have any

individual interest in the Loans, much less a right to demand immediate payment of

receivables for which C1R Distribution itself has not yet been paid.

    The Operating Agreement provides:

> 1.2 Nature of Members' Interests. The interests of the Members
> in the Company shall be personal property for all purposes.
> Legal title to all Company assets shall be held in the name of
> the Company. *Neither any Member nor a successor,*
> *representative or assign of such Member, shall have any right,*
> *title or interest in or to any Company property or the right to*

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

1         *partition any real property owned by the Company.* (Emphasis

2 added).

3         Former Corporations Code section 17300 similarly provides, "[a] member or

4 assignee has no interest in specific limited liability company property." See also

5 *PacLink Communications Internat., Inc. v. Superior Court*, 90 Cal.App.4th 958, 964

6 (2001) ("members of the LLC hold no direct ownership interest in the company's

7 assets").

8         The Loans – accounts receivable – are the property of the Company, as are

9 funds received in repayment of the Loans.  By the plain language of the Operating

10 Agreement and governing law, neither Hot Box nor the Debtor has any right, title or

11 interest in or to such property.  As such, C1R Distribution's alleged failure to remit

12 such funds to Hot Box or the Debtor does not constitute a breach of the Operating

13 Agreement.

14         To the extent that Plaintiff's claims for "unpaid distribution payments" are

15 based on the claim that C1R Distribution, LLC approved distributions to members

16 but did not pay them, they are simply incorrect.  C1R Distribution's tax returns for

17 the relevant years show that no distributions were approved or made in any of the

18 years at issue. See Papile Decl., ¶ 7 (tax returns show that no membership

19 distributions were made to members of C1R Distribution in 2013, 2014, or 2015).

20         To the extent that Plaintiff's claims for "unpaid distribution payments" are

21 based on the theory that C1R Distribution, LLC *should have* approved distributions to

22 members, but did not, Plaintiff does not allege that C1R Distribution was in a

23 financial position to make such distributions, or that it made distributions in a manner

24 inconsistent with the operating agreement.  In addition, Plaintiff would need to allege

25 facts sufficient to overcome the presumptions of the business judgment rule.

26         "The business judgment rule 'sets up a presumption that directors'' decisions

27 are based on sound business judgment. This presumption can be rebutted only by a

28 factual showing of fraud, bad faith or gross overreaching." (*Ritter & Ritter, Inc.*

*Pension and Profit Plan v. Churchill Condominium Assn.*, 166 Cal.App.4th 103, 123 (2008).) "But a plaintiff must allege sufficient facts to establish these exceptions. To do so, more is needed than 'conclusory allegations of improper motives and conflict of interest. Neither is it sufficient to generally allege the failure to conduct an active investigation, in the absence of (1) allegations of facts which would reasonably call for such an investigation, or (2) allegations of facts which would have been discovered by a reasonable investigation and would have been material to the questioned exercise of business judgment.' . . . 'Interference with the discretion of directors is not warranted in doubtful cases.' " (*Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal.App.4th 1020, 1046 (2009).). Since it is not even clear from the Complaint whether Plaintiff thinks C1R Distribution *did* make such distributions, and withheld them from Hot Box (a position foreclosed by C1R Distribution's tax returns) or *did not* make such distributions, but should have, it seems plain that Plaintiff's factual allegations are not sufficient to rebut the presumption of the business judgment rule with respect to unmade distributions.

With respect to capital accounts, the Operating Agreement further provides:

6.7 Withdrawal or Reduction of Contributions to Capital. No Member shall have the right to withdraw any part of his capital contribution or to receive any return on any portion of his capital contribution, except as may be otherwise specifically provided in this Agreement. Under circumstances involving a return of any capital contribution, no Member shall have the right to receive property other than cash. No Member shall have priority over any other Member, either as to the return of capital contributions or as to net income, net losses or distributions; provided that this subsection shall not apply to loans that a Member has made to the Company.

8.1 Withdrawal. Except as otherwise provided in this Agreement, no Member shall at any time retire or withdraw from the Company or withdraw any amount out of his capital account. Any Member retiring or withdrawing in contravention of this section shall indemnify, defend and hold harmless the Company and all other Members (other than a Member who is, at the time of such withdrawal, in default under this Agreement) from and against any losses, expenses, judgments, fines, settlements or damages suffered or incurred by the Company or any such other Member arising out of or resulting from such retirement or withdrawal.

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

1    The only circumstance "otherwise provided" in the Operating Agreement in

2    which a member is entitled to the return of his capital account is upon dissolution of

3    the company, and then only to the extent that such funds remain after payment of all

4    company obligations.  Since the company has not been dissolved, Hot Box is not

5    entitled to the return of any portion of its capital account under the Operating

6    Agreement, and the alleged failure to return such capital account – or to turn over

7    other property of the LLC—cannot constitute a breach of fiduciary duty.

8    **C.    The Complaint fails to state facts sufficient to constitute a claim for
9    Aiding and Abetting Breach of Fiduciary Duty**

10    Without an underlying breach of fiduciary duty, Plaintiffs' claim against

11    Novinger and Rascal Video, LLC for aiding and abetting that breach (Count Two)

12    should be dismissed. California has adopted the common law rule for subjecting a

13    defendant to liability for aiding and abetting a tort. "`Liability may ... be imposed on

14    one who aids and abets the commission of an intentional tort if the person (a) knows

15    the other's conduct constitutes a breach of duty and gives substantial assistance or

16    encouragement to the other to so act or (b) gives substantial assistance to the other in

17    accomplishing a tortious result and the person's own conduct, separately considered,

18    constitutes a breach of duty to the third person.' (*Saunders v. Superior Court*, 27 Cal.

19    App. 4th 832, 846, 33 Cal.Rptr.2d 438 (1994) ; Rest.2d Torts, § 876.)" (*Fiol v.

20    Doellstedt*, 50 Cal.App.4th 1318, 1325-1326, 58 Cal.Rptr.2d 308 (1996).) Where

21    Plaintiffs cannot state a claim for breach of fiduciary duty, they likewise cannot state

22    a claim for aiding and abetting that alleged breach.  Because Plaintiffs' underlying

23    breach of fiduciary duty claim is defective for the reasons articulated above, see

24    Argument, Section III (B), supra, Plaintiffs' aiding and abetting breach of fiduciary

25    duty claim fails as well.

26    **D.    The Complaint fails to state facts sufficient to constitute a claim for
27    Breach of Written Agreement**

28    Plaintiff asserts that C1R, Inc. and Novinger breached the Operating

*NOTICE OF MOTION AND MOTION TO DISMISS*

1  Agreement by 1) "failing to pay Hot Box, prepetition, and now the Debtor's estate,

2  postpetition, what Hot Box and Debtor were entitled to be paid for Rascal repayments

3  on the Loans and by failing to pay any portion of Hot Box's capital account to Hot

4  Box or the Debtor, which as of December 31, 2015 totaled $157,283 and failing to

5  pay any part of the Loans due to Hot Box or the Debtor in the amount of

6  $242,178.88." Plaintiff's claim for breach of contract fails because neither Hot Box

7  nor the Debtor is entitled to be paid any portion of "Rascal repayments on the Loans,"

8  Hot Box's capital account, or the loans themselves.

9      In a case involving the interpretation of a contract under California law,

10 dismissal is appropriate where "the court considers the contract language and the

11 evidence the parties have presented and concludes that the language is reasonably

12 susceptible to only one interpretation." *Skilstaf, Inc. v. CVS Caremark Corp.,* 669

13 F.3d 1005, 1017 (9th Cir. 2012). Where the court reaches such a conclusion, it need

14 not afford plaintiff any "additional opportunities to find or present extrinsic evidence"

15 and may dismiss the complaint on a motion to dismiss. *Id.*

16     When the language in a contract is clear and explicit, as it is here, the Court

17 must give it effect to honor the intent of the parties. See *AIU Ins. Co. v. Superior*

18 *Court,* 51 Cal. 3d 807, 821-22 (1990) ("[T]he mutual intention of the parties at the

19 time the contract is formed governs interpretation. Such intent is to be inferred, if

20 possible, solely from the written provisions of the contract."); Cal. Civ. Code § 1636

21 ("A contract must be so interpreted as to give effect to the mutual intention of the

22 parties as it existed at the time of contracting . . . ."); Cal. Civ. Code § 1638 ("The

23 language of a contract is to govern its interpretation, if the language is clear and

24 explicit, and does not involve an absurdity."); Cal. Civ. Code § 1639 ("When a

25 contract is reduced to writing, the intention of the parties is to be ascertained from the

26 writing alone, if possible. . . .").

27     As set forth in Section III (B), supra, the plain language of the operating

28 agreement precludes Plaintiff's breach of contract claims. The Managers of C1R

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

1  Distribution did not elect to distribute cash to members in 2013, 2014 or 2015, and

2  even a cursory review of its tax returns for those years reveals that it was not in a

3  position to do so. Neither Hot Box nor any other member has a right to the return of

4  its capital account, or to distribution of company funds (whether received on account

5  of the Loans or otherwise), or possession of company assets (much less immediate

6  possession of hundreds of thousands of dollars that C1R Distribution has not received

7  and may not receive.   The Plaintiff cannot bring a claim for breach of an agreement

8  based on conduct expressly permitted by that agreement, and Plaintiff's claim for

9  breach of written agreement should be dismissed.

10  **E.    The Complaint fails to state facts sufficient to constitute a claim for Conversion**

11

12  "Conversion is the wrongful exercise of dominion over personal property of

13  another." (5 Witkin, *Summary of Cal. Law* (10th ed. 2005), Torts, § 699, p. 1023.)

14  Ordinarily, a generalized claim for money is not considered a usual subject of

15  conversion, because a specific and identifiable sum must be involved. (*Vu v.*

16  *California Commerce Club,* Inc., 58 Cal.App.4th 229, 235 (1997); 5 Witkin,

17  *Summary of Cal. Law,* supra, Torts, § 703, pp. 1026-1027. ) If a "plaintiff neither has

18  title to the property alleged to have been converted, nor possession thereof, he cannot

19  maintain an action for conversion." (*Moore v. Regents of University of California*, 51

20  Cal.3d 120, 136 (1990)  (*Moore*), cited in *Fischer v. Machado*, supra, 50 Cal.App.4th

21  1069, 1072 (1996).)

22  To the extent that Plaintiff's claims for "unpaid distribution payments" are

23  based on the claim that C1R Distribution, LLC approved distributions to members

24  but did not pay them, they are simply incorrect.  C1R Distribution's tax returns for

25  the relevant years show that no distributions were approved or made in any of the

26  years at issue. See Papile Decl., ¶ 7 (tax returns show that no membership

27  distributions were made to members of C1R Distribution in 2013, 2014, or 2015).

28  To the extent that Plaintiff's claims for "unpaid distribution payments" are

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

based on the theory that C1R Distribution, LLC *should have* approved distributions to members, but did not, Plaintiff quite plainly cannot truthfully allege that it had title to, or possession of, such property, and cannot maintain an action for conversion thereof.

To the extent that Plaintiff's conversion claim is based on Plaintiff's "right to possess… the approximately $157,283 from Hot Box's capital account," Plaintiff's claim is barred by the plain language of the Operating Agreement, which expressly provides that Hot Box does *not* have any such right:

> 6.7 Withdrawal or Reduction of Contributions to Capital. No Member shall have the right to withdraw any part of his capital contribution or to receive any return on any portion of his capital contribution, except as may be otherwise specifically provided in this Agreement. Under circumstances involving a return of any capital contribution, no Member shall have the right to receive property other than cash. No Member shall have priority over any other Member, either as to the return of capital contributions or as to net income, net losses or distributions; provided that this subsection shall not apply to loans that a Member has made to the Company.

> 8.1 Withdrawal. Except as otherwise provided in this Agreement, no Member shall at any time retire or withdraw from the Company or withdraw any amount out of his capital account. Any Member retiring or withdrawing in contravention of this section shall indemnify, defend and hold harmless the Company and all other Members (other than a Member who is, at the time of such withdrawal, in default under this Agreement) from and against any losses, expenses, judgments, fines, settlements or damages suffered or incurred by the Company or any such other Member arising out of or resulting from such retirement or withdrawal.

(Complaint, Ex. C, §§6.7, 8,1)  (D.I. 4).

Moreover, Plaintiff's claim appears to rest on a misunderstanding of the nature of a "capital account," which cannot be converted because it is not "personal property" but a bookkeeping function used to track members' contributions and respective shares of profits and losses.  (See id. at §6.2) ("The Company shall maintain a separate capital account for each Member pursuant to the principles of this section and applicable Treasury Regulations.  The initial capital account of each

*NOTICE OF MOTION AND MOTION TO DISMISS*

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

member, which shall be the Member's initial capital contribution, shall be increased

by the amount of such Member's subsequent capital contributions and by such

Member's allocable share of Company Income and Net Income as hereinafter

provided, and each Member's capital account shall be decreased by the amount of

cash distributed to the Member by the Company and by such Member's allocable

share of Loss and Net Loss as hereinafter provided.")

Pursuant to the operating agreement, the assets and liabilities which are tracked

by members' capital accounts are the property of the LLC, not of the individual

members:

> 1.2 Nature of Members' Interests. The interests of the Members in the Company shall be personal property for all purposes. Legal title to all Company assets shall be held in the name of the Company. **Neither any Member nor a successor, representative or assign of such Member, shall have any right, title or interest in or to any Company property or the right to partition any real property owned by the Company.** (Emphasis added).

(Complaint, Ex. C, §1.2) (D.I. 4).

Former Corporations Code section 17300 similarly provides, "[a] member or

assignee has no interest in specific limited liability company property." See also

*PacLink*, 90 Cal. App. 4th at 964 ("members of the LLC hold no direct ownership

interest in the company's assets.") As such, neither the Debtor nor Hot Box can claim

a right of possession of *specific* property of the LLC, and the conversion claim fails.

Finally, the claim for conversion makes a conclusory allegation that *all*

Defendants "interfered with the Property by taking possession of the Property,

preventing the Plaintiff from having access to the Property, and/or refusing to return

the Property." If defendants *other* than C1R Distribution took possession of the

Property, though, the claim for conversion fails because such conduct would damage

the corporate entity as a whole, and would need to be asserted as a derivative claim.

A claim is derivative if its gravamen "is injury to the corporation, or to the whole

body of its stock and property without any severance or distribution among individual

holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets." (*Jones v. H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 106-107 (1969).) Derivative claims include claims of company mismanagement and improper selling and purchasing of company assets. (*Avikian v. WTC Financial Corp.*, 98 Cal.App.4th 1108, 1115-1116 (2002).) Derivative claims also include claims for the fraudulent transfer of company assets without compensation to the company. (*PacLink*, 90 Cal.App.4th at 964.) These claims are derivative because members of a limited liability company have no direct ownership interest in the company's assets. The members, therefore, cannot be directly injured when the company is deprived of assets. Instead, their injury is essentially a diminution in the value of their interest in the company due to the company's loss of assets and is incidental to the injury suffered by the company.

Plaintiff cannot establish that any defendant applied an identifiable sum, to which Hot Box was clearly entitled, for such defendant's own use. All property at issue belonged to the LLC, which administered them in accordance with the operating agreement. As such, Plaintiff's claim for conversion fails.

### F.    The Complaint fails to state facts sufficient to constitute a claim for Turnover and Accounting

Plaintiff alleges that "the distributions due to Hot Box in the amount of $29,918.52, prepetition, and a minimum sum of $5,775.27, postpetition (collectively the "Distributions")…constitutes property of the estate for which the Debtor has a legal or equitable interest as of the commencement of his bankruptcy proceeding." (Complaint ¶ 49). As set forth above, however, and as evidenced by C1R Distribution's tax returns, no other members received distributions, and there is no basis whatsoever for the claim that such distributions are "due" to Hot Box. The Trustee's position appears to be based on the belief that there is some requirement that any money received by C1R Distribution be distributed, dollar for dollar, among the LLC members without regard for payment of C1R Distribution's debts. This is

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

*NOTICE OF MOTION AND MOTION TO DISMISS*

1  not permitted by the operating agreement or the law.   The "distributions" are not

2  properly subject to a turnover order because no distributions to members were

3  authorized or made and there is no evidence to suggest that C1R Distribution is in

4  possession of distributable cash sufficient to make the distributions Trustee demands.

5        Plaintiff further alleges that "Hot Box's capital account, which as of December

6  31, 2015, totaled $157,283 ("Capital Account") constitutes property of the estate for

7  which the Debtor has a legal or equitable interest as of the commencement of his

8  bankruptcy proceeding" (Id.).  Again, Plaintiff misconstrues the nature of a capital

9  account.  Under the Beverly-Killea Limited Liability Company Act (which was in

10  effect from the formation of C1R Distribution through 2014), "capital account"

11  means . . . the amount of the capital interest of a member in the limited liability

12  company consisting of that member's original contribution, as (1) increased by any

13  additional contributions and by that member's share of the limited liability company's

14  profits, and (2) decreased by any distribution to that member and by that member's

15  share of the limited liability company's losses [former] Corporations Code Section

16  17001(d).  Since contributions can consist of property other than money and services,

17  *id* at 17001(g), a capital account is not a cash account, nor is there any requirement

18  that the initial capitalization of a company be maintained rather than spent in

19  establishing the company. As such, the value of Hot Box's capital account is not itself

20  an asset that could be turned over.  Rather, it represents, broadly speaking, a

21  collection of bookkeeping entries that reflect the proportion of  Hot Box's ownership

22  of C1R Distribution's assets – which include the Loans and the money received in

23  payment on the Loans.  (*See id*; Complaint Ex. C §§ 6.1-6.7).  By claiming

24  entitlement to the Distributions, plus the capital account, plus the Loans, the Trustee

25  is asking for the same dollar three different ways.  Conceptually, the members

26  contributed capital, which funds were used to operate the business, which eventually

27  resulted in the business owning the assets that were then sold in exchange for the

28  Loans, which are repaid over time. The capital account cannot be turned over because

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

1   it is not, itself, "property."

2       In any event, Hot Box is not entitled to return of its capital account under the

3   operating agreement, nor to any portion thereof.   The only property to which the

4   Trustee is entitled is Debtor's ownership interest in Hot Box, which is already in the

5   Trustee's possession.  The mandatory method for valuing that interest upon an

6   involuntary transfer – such as the transfer to Trustee – is set forth in Sections 4.2-4.4

7   of the operating agreement.

8       With respect to the Trustee's claim for an accounting, the Trustee is in

9   possession of C1R Distribution's tax returns (as evidence by their being cited

10  throughout the Complaint).  No accounting is needed to determine "how money from

11  Rascal was distributed to the other members," as the tax returns show that none was.

12  No accounting is needed to determine the status of Hot Box's capital account, the

13  amount of which is reported every year on Hot Box's Schedule K-1.  No accounting

14  is needed to determine "all legal and equitable interests of the Debtor and Hot Box in

15  C1R Distributions" – the Debtor has no such interest, and, as far as defendants are

16  aware, there is no dispute that Hot Box's twenty percent interest is now an economic

17  interest held by the Trustee as part of the bankruptcy estate.  (See Complaint Ex. C, §

18  4.5) (Unless and until admitted as a Member of the Company, involuntary transferee

19  holds only economic interest.)

20                    **CONCLUSION**

21      The Complaint appears to reflect a belief that Hot Box occupies a privileged

22  position with respect to the other members of C1R Distribution and C1R

23  Distribution's creditors, such that Hot Box is entitled to claim priority distributions of

24  revenue and capital, and demand the partition and distribution of company assets,

25  without regard to the Operating Agreement, the law, or the solvency of C1R

26  Distribution.  The Trustee fails to articulate any facts that would support such an

27  astonishing finding, though, and the facts that are alleged, if stripped of their

28  "defendants are bad" rhetoric, amount to little more than a gripe that C1R

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

LAW OFFICE OF S. CHRISTOPHER WINTER
5455 WILSHIRE BLVD., SUITE 1505
LOS ANGELES, CALIFORNIA 90036

1  Distribution does not have as much money as the Trustee might wish.  This is not

2  sufficient to support the claims alleged, and, given Hot Box's suspension, is

3  improper.  The Complaint should be dismissed with prejudice.

4

5  Dated:  May 25, 2017                    Respectfully submitted,

6                                          LAW OFFICE OF S. CHRISTOPHER WINTER

7

8                                          By:_____
                                           S. Christopher Winter
9                                          Attorney for Defendants
                                           C1R DISTRIBUTION, LLC,
10                                         RASCAL VIDEO, LLC, C1R, INC.,
                                           ROBERT NOVINGER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28